KENNEDY (ROSE v.). See Case No. 12,049.

## Case No. 7,706.

KENNEDY et al. v. ST. PAUL & P. R. CO. et al.

[2 Dill. 448.][1]

Circuit Court, D. Minnesota. Sept. 1, 1873.

LAND GRANT TO RAILROAD COMPANY—RECEIVER—POWER TO BORROW MONEY TO COMPLETE LINE OF ROAD TO SAVE THE LAND GRANT.

1. To prevent a valuable land grant in favor of a railroad company from lapsing, a receiver was appointed at the instance of bondholders of the company, whose principal security was the said lands, and the receiver was empowered to borrow money to complete the unfinished portions of the road, and his debentures issued for that purpose were made a lien on the road and lands of the company.

[Cited in Credit Co. of London v. Arkansas Cent. R. Co., 15 Fed. 50; Investment Co. of Philadelphia v. Ohio & N. W. R. Co., 36 Fed. 52; Kneeland v. Luce, 141 U. S. 491, 12 Sup. Ct. 38.]

[Cited in Vermont & C. R. Co. v. Vermont Cent. R. Co., 50 Vt. 579; Snow v. Winslow, 54 Iowa, 205, 6 N. W. 191; McLane v. Placerville & S. V. R. Co., 66 Cal. 624, 6 Pac. 748.]

2. Form of the order, and the nature of the lien for the money borrowed. (See note.)

This was a motion by complainants [John S. Kennedy & Co.] upon bill and affidavits for the appointment of a receiver. The complainants are holders of certain railroad

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

mortgage bonds, and sue for themselves and all other bondholders who may come in and seek relief by the suit. The defendants are, "The St. Paul & Pacific Railroad Company," "The First Division of the St. Paul & Pacific Railroad Company" (both corporations under the laws of Minnesota), George L. Becker, Wm. G. Moorehead, and Horace Thompson, trustees under a certain mortgage for $15,-000,000, hereinafter described, certain trustees under other mortgages given by said railroad companies, and "The Northern Pacific Railroad Company."

The material facts are substantially as follows, viz.: The said St. Paul & Pacific Company was organized under the act of March 10, 1862, and was authorized, inter alia, to construct a railroad from St. Paul, northwesterly, via St. Anthony, to Breckenridge, about two hundred and twenty miles, called the "Main Line;" with a branch from St. Anthony, up the Mississippi river, to Watab, about ninety miles, called the "Branch Line;" with a line from Watab, up said river, to Brainerd, about sixty miles, called the "Brainerd Extension;" with a line from St. Cloud, northwesterly, to St. Vincent, near the British Possessions, about three hundred and thirty miles, called the "St. Vincent Extension." Under acts of congress of March 3, 1857, March 3, 1865, and March 3, 1871, respectively, and various legislative acts of the state of Minnesota, said company was endowed with a land grant of ten sections to the mile, title to vest as often as twenty miles should be completed and equipped. The said First Division Company was created out of said St. Paul & Pacific Company by the issue of special stock under act of the state legislature February 6, 1864, and was vested with all the rights, franchises, and property of said St. Paul & Pacific Company appertaining to said main line, from St. Paul to Breckenridge, and to said branch line from St. Anthony to Watab. Its lines of road are all completed. It stands charged with mortgages as follows, viz: On main line, from St. Anthony to Breckenridge—March 1, 1864, $3,000,000; July 1, 1868, $6,-000,000; December 1, 1870, $1,500,000, to one Litchfield. On branch line, from St. Paul to Watab—March 11, 1862, $120,000; June 2, 1861, one for $700,000 and one for $1,200,000; October 1, 1865, $2,800,000. Of the latter class but $780,000 were issued, leaving $2,-020,000, for exchange for bonds of the prior issues, making the entire bonded indebtedness on the main line $10,500,000, and on the branch line about $2,800,000. Except the Litchfield mortgage, nearly all of this indebtedness is owned and held in Holland, Europe.

In the fall of the year 1870, the east sixty miles of the said main line was uncompleted, and the parties interested in its completion, including said First Division Company, in order to raise money for its completion and at the same time secure the completion of the said St. Vincent and Brainerd extensions, brought about an arrangement between the said two companies as follows, viz: On the 1st of April, 1871, the said First Division Company issued its bonds for $15,000,000, and, to secure said issue, the said St. Paul & Pacific Company mortgaged to said Becker, Moorehead, and Thompson, trustees, all its franchises, rights, and property, including its said land grant, appertaining to said St. Vincent and Brainerd extensions, and executed to said First Division Company a lease, for ninety-nine years, of its road for both of said extensions, and, in consideration thereof, the said First Division Company undertook to negotiate said bonds, and out of the proceeds thereof to construct, complete, and equip the said extensions from St. Cloud to St. Vincent, and from Watab to Brainerd, on or before the 1st day of March, 1873, on which day, the aforesaid land grant would lapse by limitation of said acts of congress. By the terms of said mortgage, the whole proceeds of said $15,000,000 issue were to go to the construction of said extension lines, so much of said scheme as contemplated a diversion of a portion of said proceeds to the said main line not being made public or communicated to the persons who subsequently purchased said bonds. At the same time the defendant, the Northern Pacific Railroad Company, became the owner, by purchase, of all the capital stock of the said St. Paul & Pacific and First Division Companies. Thereupon the said First Division Company constituted the firm of Lippman, Rosenthal, & Co., of Amsterdam, Holland, its agents, to negotiate said bonds, and prior to January 1, 1872, 10,700 of said bonds for $1,000 each were so negotiated, the proceeds amounting to about $8,000,000, after which time the market fell, and no further bonds could be negotiated. The balance of said bonds are still held by said Lippman, Rosenthal, & Co. agents, who claim to hold them for advances to said First Division Company to the amount of $900,000. Of the money thus realized, twenty per cent was set apart for interest, and, after payment of commissions and other expenses, about $3,000,000 of the remainder was used in the completion of said main line and the payment of interest on the main line mortgage bonds, and the balance was used in the purchase of iron and material and in the payment to contractors for work on said extension lines. In the fall of 1871, the whole work of constructing and completing said extension lines was let to DeGraff & Co. and commenced by them, the iron to be furnished by the First Division Company—the whole work to be completed prior to said March 3, 1873. In July, 1872, the First Division Company failed to meet its engagements to its contractors, and in October of that year was obliged, for want of funds, to order the work stopped, owing to its contractors about $700,000, which was subsequently reduced, by a payment in iron, to about $500,000, which it still owes to said

contractors. At the time of such suspension the Brainerd extension was all graded ready for the ties, except about four miles—thirty-five miles from St. Cloud westward, and about one hundred and four miles commencing twelve miles south of Glyndon, the point of junction with said Northern Pacific Company, and extending northward—in all about one hundred and thirty-nine miles, was completed, with cars running, leaving about two hundred and fifty-one miles unfinished, but about three-fourths graded.

By act of congress of March 3, 1873 [17 Stat. 631], the life of said land grant was extended to December 3, 1873. The said First Division Company, at the time of the hearing (July 29, 1873), had taken no step toward completing said lines, and was insolvent, having a large floating debt and interest coupons under protest. It is admitted, or shown, that the average value of the lands to be secured by the construction of said lines is $6 per acre, and without said lands the security for said bonds of the $15,000,000 issue will be greatly inadequate, and the holders thereof must suffer great and irreparable loss. Nearly the whole of said last-named issue of bonds are held in Holland, and the complainants are holders of some of them, as well as holders of some of the bonds of all of said issues except the Litchfield mortgage. Said complainants claim to represent all of the Holland holders of said $15,000,000 issue, and produce specific authority, by cable, from Amsterdam, from such holders, to the amount of $11,622,750 thereof. They also claim, that by reason of the insolvency of said First Division Company, and of various fraudulent and improper acts of its managing officers—which are not here recited, because the court does not deem them material to the real merits of the application—that a receiver should be appointed for all the lines of said First Division Company, as well as of said extension lines; and they claim as part of the relief to which they are entitled, that the court should charge the sum of $3,000,000, which was so diverted from said extension lines to said main line, as a specific lien upon said main line in favor of said extension lines, to take precedence of the mortgages upon said main line. They also ask that said receiver be authorized to borrow money sufficient to complete said extension lines by the 3d day of December next, and secure the same by debentures, to be a lien upon said extension lines and the lands belonging thereto, to take precedence of said mortgage thereon, and with such money to complete said lines and secure said lands without delay.

George L. Otis, J. M. Gilman, and James Gilfillan, for plaintiffs.

Messrs. Bigelow, Smith, Cuyler, and Gray, for several defendants.

DILLON, Circuit Judge. I am of opinion, upon the facts shown by the pleadings, exhibits, and affidavits, that the plaintiffs are entitled to a receiver as respects the St. Paul & Pacific Company, but not as respects the other defendants. The application has been earnestly pressed as against the First Division Company on the ground of the diversion of the loan for the benefit of that company. But it appears that the road of this company is mortgaged probably to its full value to bona fide holders of bonds who had no notice of the equity set up by the plaintiffs. The contingency of the plaintiffs establishing an equitable lien upon the road of the First Division Company, as against its mortgage bondholders, is so improbable as to render it quite clear that the application for a receiver should, to this extent, be denied. But as against the St. Paul Company, it is manifest that unless a receiver is appointed no further work will be done upon the extension lines, and that the land grant, which is the only security of any considerable value which the plaintiffs and other bondholders have for their large advances, will lapse and be wholly lost. In order to save this land grant the road must be completed by December 3, ensuing; and it seems to me that the exigencies of the case are such as, under the circumstances, to warrant the court, upon the application of the parties chiefly interested, to appoint a receiver and to clothe him with the powers desired.

An order may be drawn up accordingly. Receiver appointed.

NOTE. The following is the order directed to be entered of record:
"John S. Kennedy, Henry M. Baker, and John S. Barnes, v. The St. Paul & Pacific Railroad Company, The First Division of the St. Paul & Pacific Railroad Company, The Northern Pacific Railroad Company, Walter S. Cutting, Russell Sage, Samuel J. Tilden, Edmund Rice, Horace Thompson, George T. M. Davis, John P. Yelverton, William Moorehead, and George L. Becker.
"The application of the plaintiffs for the appointment of a receiver in this cause coming on for a hearing before me at my chambers in the city of Davenport, in the state of Iowa, and, after hearing the bill and various affidavits and proofs of the respective parties, and Messrs. Gilman, Otis, and Gilfillan, of counsel for the plaintiffs, and Mr. Bigelow, of counsel for the defendants, the First Division of the St. Paul & Pacific Railroad Company, George L. Becker, and Horace Thompson, and Mr. Gray, of counsel for the defendant, the St. Paul & Pacific Railroad Company, and Mr. Smith, of counsel for the defendant, the Northern Pacific Railroad Company, appearing specially and objecting that the court has not jurisdiction of said defendant; and Mr. Cuyler, of counsel for the defendant, William G. Moorehead, and, after due deliberation thereon, it is ordered, adjudged, and decreed, that Jesse P. Farley, Esq., of Dubuque, Iowa, be and he is hereby appointed receiver of all and singular that certain branch line of railroad of the defendant, the St. Paul & Pacific Railroad Company, or which the said railroad company is by law authorized to construct, and which is to be constructed and to run from a point at or near the town of St. Cloud, in the county of Stearns, and state of Minnesota, to the town of St. Vincent, in said state, and also of that other line of railroad of said defendant, the St. Paul & Pacific Railroad Com-

pany, which said railroad company is by law authorized to construct, and which is to be constructed and to run from Watab, in the county of Benton, to Brainerd, in the county of Crow Wing, within said state, as contemplated by various acts of the congress of the United States; and also of all the right, title, and interest which said defendant, the St. Paul & Pacific Railroad Company, has now or shall at any time hereafter acquire by reason of the construction of said railroads, or of either, or of any part of either thereof, in, to, and concerning all the lands situate in said state of Minnesota and granted, or intended to be granted, by various acts of the congress of the United States for the purpose of aiding in the construction of said lines of railroad, or which the said defendant, the St. Paul & Pacific Railroad Company, has acquired or may be entitled to, or may hereafter acquire, pertaining to said railroad by grants from said state of Minnesota, and of all and singular the roadbeds, tracks, bridges, viaducts, culverts, fences, freight-houses, woodhouses, machine shops, and other shops, and all other structures, buildings, and materials whatsoever, placed or to be placed on the said railroads respectively, or either or any part of either thereof, or acquired or to be acquired for the use of the same; and, also, of all locomotives, tenders, passenger, baggage, freight, cattle, and other cars, and all other rolling stock whatsoever; and, also, of all machinery, tools, implements, fuel, and materials now owned or hereafter to be acquired by said defendant, the St. Paul & Pacific Railroad Company, for constructing, operating, repairing, or replacing the said railroads, or either or of any part of either thereof, and of all the equipments or appurtenances of the said railroads, or of either or any part of either thereof, and of all property, rights, franchises, privileges whatsoever, appertaining to the said railroads, or to either or any part of either thereof, now held or hereafter to be acquired by said defendant, the St. Paul & Pacific Railroad Company, together with all and singular the tenements, hereditaments, and appurtenances to the said railroad, lands, and premises, or any part thereof, belonging or in anywise appertaining; and, also, of all the estate, right, title, interest, property, possession, claim, and demand whatsoever, as well in law as in equity of the said defendant, the St. Paul & Pacific Railroad Company, in, to, and concerning the said railroad, and every part and parcel thereof, with the powers and duties hereinafter expressed.

"And the said receiver is hereby authorized and directed forthwith to take possession of all and singular the aforesaid property, and to proceed without delay to construct and complete the unconstructed portions of said railroads, and to put those portions thereof already constructed, or partly constructed, in good order to be operated as a railroad, and to do the same, if practicable, by or before the 3d day of December next.

"And he is further authorized and directed to do and perform all acts and things necessary to be done and performed to vest and secure in said railroad company the title to all lands granted or intended to be granted by any acts of congress or of the legislature of the state of Minnesota to the said railroad company. And for such purpose the said receiver is hereby authorized and directed to borrow, on the terms as to time of payment and rates of interest set forth in the following form of debenture, a sum of money not exceeding $5,000,000 as shall be necessary to complete and equip said railroads, so as to secure said lands as herein directed, and to issue to the person or persons advancing said sum or sums of money his debentures or certificates, with coupons or interest warrants attached, signed by him, expressing the amounts so advanced, and the terms upon which the same shall be advanced, which debentures or certificates shall be in the form following:—

" '$———. St. Paul, Minnesota, ———, 1873.
" 'Five years after date, unless sooner paid, for value received, I promise to pay to ———, or his assigns, the sum of ——— dollars in gold, with interest thereon at the rate of ten per centum per annum, payable in gold semi-annually on the first days of July and January of each year at the city of New York.

" 'This obligation is issued under and by virtue of certain provisions of an order of the circuit court of the United States for the district of Minnesota, dated on the ——— day of ———, 1873, a copy of which is indorsed hereon, and is part of the loan thereby authorized to be made by me as receiver of the St. Paul & Pacific Railroad Company, amounting, in all, to the sum of $5,000,000.

" 'The said loan, or so much thereof as may be required to complete the construction of the St. Paul & Pacific Railroad, and shall be borrowed by me for that purpose under the authority aforesaid, is made and constituted, as provided in the order of the court, a first lien upon all the property of every nature and description of the said railroad company; and the earnings of said railroad, after deducting the operating expenses and the expenses of the receivership, are pledged for the payment of the principal and interest of this obligation, according to the tenor thereof.

" 'Failure to pay interest for six months will make principal due at option of holder.
" '———, Receiver.'
"(Interest coupons annexed.)

"Until further order of the court, said debentures shall not be sold for less than par in the currency of the United States, and before any shall be sold the receiver must be satisfied that he can sell or place sufficient thereof to complete and equip the said road or some one or more of the unconstructed intervals in the line thereof.

"And it is hereby further ordered, adjudged, and decreed that such debentures or certificates shall be, and they are hereby, adjudged to be a lien for the principal and interest thereof, upon all the lands, premises, and property hereinbefore mentioned, prior to all other liens or claims thereon whatsoever. And the defendant, the St. Paul & Pacific Railroad Company, is hereby ordered, adjudged, and decreed to pay the principal and the interest mentioned in such debentures or certificates at the times and according to the terms thereof, and in case of failure of said company to pay the interest or principal of such debentures or certificates according to the terms thereof, any holder, or any number of holders, of such debentures or certificates may institute and prosecute a suit in his or their name or names on behalf of himself or themselves, and all others, the holders of said debentures or certificates, to enforce the lien and compel payment thereof.

"And the said receiver is authorized to purchase all necessary material, to employ all necessary agents and servants, and to make all contracts necessary for the purposes aforesaid. And the defendants, and each of them, having in their, his, or its possession, or under their, his, or its control any of the property hereinbefore mentioned, are hereby ordered forthwith, upon the demand of said receiver, to deliver the same into the possession of said receiver. And the said defendants, and each of them, and their, his, or its officers, agents, attorneys, and servants, are hereby strictly enjoined and commanded absolutely to refrain from interfering with the said lands, premises, and property, or any part thereof, and from in any manner interfering with the said receiver in the performance, by him, of the acts which he is hereby directed to perform. This injunction shall not be construed to prohibit the officers of the St. Paul & Pacific Railroad Company from taking any steps necessary to secure to said company titles to lands granted to it, nor to prevent the Northern Pacific Railroad Company asserting before

the departments at Washington, or in any court, its right to any lands granted to it.

"And it is further ordered that said receiver, before entering upon the duties of his office, take and file with the clerk an oath to faithfully perform the duties thereof, and also file with the clerk a bond, with two or more sureties, to be approved by the judge of the district court of the United States for the district of Minnesota, in the sum of one hundred thousand dollars ($100,000), conditioned for the faithful performance of such duties.

"That said receiver deposit all moneys coming into his hands in the registry of the court at St. Paul, and said money shall be paid out under the rules of the court. That said receiver, after assuming the duties of his office, make and file with the clerk on the first day of each month a full statement of the business of his office during the preceding month. The main object of this order is to ensure the completion of the said roads by the 3d day of December next, and the receiver is instructed so to act, under the limitations aforesaid, as to see that this object shall be accomplished, and to proceed at once and with expedition.

"All contracts for construction, or purchase of iron, to be approved by the court, or by one of the judges thereof. It is the intention of the foregoing order, that if the said $5,000,000, or so much thereof as may be required fully to complete said extension lines, shall be furnished to or borrowed by the receiver to give to the holders of the said receiver's debentures a first lien upon the said road, road-bed, franchises, and lands, and each and every part thereof, and the income and earnings of the said road, as specified in the above order. If, however, the receiver shall borrow upon the said debentures herein authorized, money sufficient to complete only some one or more of the unconstructed intervals in the line of said road, it is the intention of said order to give to the holders of the said debentures a first lien upon the road and road-bed so completed, and the franchises of the company pertaining thereto, and all the lands to which the said company may be entitled or may acquire by virtue of the completion of the said part or parts of said road.

"And if any of the money so borrowed by the said receiver on the said debentures shall be used for finishing or putting in order any part of said road now ironed, the same to the extent thus used shall be a first lien on the part or parts of said road upon which it is used. All other matters are continued until the first Monday in September next.

"Given under my hand August 1, 1873. ·
"John F. Dillon, Circuit Judge."

On the first day of September, upon a further hearing, the foregoing order was modified as follows:

"The original order, appointing Jesse P. Farley receiver herein, having been made on the first day of August, 1873, and dated of that date, and the matters continued in and by said order coming on again before me at my chambers at Davenport, Iowa, on the first day of September, A. D. 1873, and having heard Geo. L. Otis, of counsel for said complainant, and Horace Bigelow, Esq. of counsel for the First Division of the St. Paul & Pacific Railroad Company, George L. Becker, and others, defendants herein; and, on motion of Mr. Otis, of complainant's counsel, it is hereby further ordered, that the aforesaid order appointing a receiver herein, as aforesaid, be, and the same is hereby modified as follows, viz:—

"1st. Until further order of the court, said debentures shall not be sold for less than par in the currency of the United States, and before any shall be sold the receiver must be satisfied that he can sell or place sufficient thereof to complete and equip the said road, or some one or more of the unconstructed intervals in the line thereof, or such portions of one or more of such unconstructed intervals as he may deem practicable.

"2d. In case the whole interval between a point at or near Melrose and a point about twelve miles south of Glyndon shall be so constructed and equipped, and the portion of the road belonging to said St. Vincent extension, which is now ironed, shall be completed by the 3d day of December, 1873, then the expense of so constructing, completing, and equipping the same shall be a first lien upon the line of the said St. Vincent extension, its road, lands, land grants, franchises, and property, from St. Cloud to the end of the present construction at a point about ninety-two miles north of Glyndon.

"3d. In case the whole of the Brainerd extension, so-called, to-wit: the line between Watab and Brainerd, shall be so constructed and equipped by the 3d day of December, 1873, then the expense of so constructing and equipping the same shall be a first lien upon the whole of said extension line, its road, land, land grants, franchises, and property.

"4th. All the expense of completing and equipping the portions of said extension lines already ironed, except in the case provided for in subdivision two, shall be a first lien upon the portions so completed and equipped.

"5th. The expense of all construction of any portion of said lines, or either of them, other than construction upon some interval to be fully completed, as aforesaid, shall be a first lien upon that portion of the road so constructed, and upon all the land, land grants, franchises, and property of such constructed portion or portions.

"6th. The bond of said receiver may be approved by either the judge of the said district court or by the judge of this court.

"7th. All further and other matters are continued until the first Monday of October next.
"John F. Dillon, Circuit Judge.
"Dated September 1, 1873."

[See Case No. 7,707.]