## BLAIR *v.* ST. LOUIS, H. & K. R. Co. and others.[1]

*(Circuit Court, E. D. Missouri.* November 3, 1884.)

1. RAILROAD MORTGAGES—RECEIVERS—ANTE-RECEIVERSHIP DEBTS.
   A failure to make the payment of *ante*-receivership debts for current expenses of a railroad—a condition of the appointment of a receiver in a foreclosure suit —is no bar to their subsequent allowance.

2. SAME—FAILURE TO FORECLOSE—AGENCY.
   A mortgagee who fails to take action upon default in the payment of interest on the mortgage debt, does not, by such failure, make the mortgagor his agent to incur debts, nor does he impliedly consent that debts incurred subsequent to the default shall take precedence over the mortgage debt.

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

3. SAME—CLAIMS ENTITLED TO PREFERENCE AS TO INCOME.
    Claims for labor and supplies which have accrued within six months of the appointment of a receiver are entitled to be paid out of the net income of the receivership. Ordinarily, older claims are not entitled to any preference.

4. SAME—CORPUS.
    Semble, that claims entitled to preference as to income may, in exceptional cases, and where a special equity appears, be made a first lien upon the corpus of the mortgaged property.

5. SAME—INTERVENING CLAIMS—EVIDENCE—COMPANY'S BOOKS.
    Where the application for a receiver contains no charge of fraud and deceit on the part of the company's officers, a master to whom intervening claims are referred may be authorized to pass upon uncontested claims without any other evidence than the admissions in the company's books, where the facts upon which such claims rest fully appear from the books, and additional evidence appears to him unnecessary.

In Equity. Exceptions to master's report.

*Walter C. Larned* and *Theo. G. Case*, for Complainant.

*John O'Grady*, for the receiver.

*James D. Carr* and *Geo. D. Reynolds*, for the intervenors.

BREWER, J. 1. The first exception runs to a matter of practice. On the twenty-fourth of March, 1884, this court, in its order respecting intervening claims, directed the master as follows:

"It is further ordered, that when an intervening claim, so far as the facts on which it rests, appears from the books of the defendant to be correct, the master may proceed to pass thereon without further evidence, unless, in his opinion, further evidence is needed, or some person in interest appears to contest the same."

The master has acted upon this direction, and its propriety is now challenged. The exception will be overruled. If no receiver had been appointed, the company would settle with its creditors upon the basis disclosed by its own books, and where the application for a receiver contains no charge of fraud and deceit on the part of the officers of the company, there is no impropriety in accepting the admissions contained in its books as *prima facie* a fair basis of settlement with claimants. It would be an unnecessary burden and expense to require extrinsic and independent evidence. Full protection against improper claims is secured by the right given to any party in interest to appear and contest, as well as by the duty imposed on the master to require testimony, if any appears to him necessary.

2. Claims for labor and supplies accruing since the default in payment of interest in 1881, more than two years prior to the appointment of the receiver, have been allowed by the master, and exceptions are taken to such allowance. In the order appointing a receiver no provision for the payment of claims was made, and it is conceded that there is nothing to show that since the default in the payment of interest there has been any diversion of income to permanent improvements. Now, the broad proposition is laid down by counsel that, unless a diversion as stated is shown, or unless the court, as a condition of appointing a receiver, requires the payment of certain claims, none can be preferred to the mortgage debt; that when the

mortgagees take possession by a receiver, the income, as well as the property of the company, become theirs. I think the supreme court has decided against this claim. In *Miltenberger* v. *Railway Co.* 106 U. S. 286, S. C. 1 Sup. Ct. Rep. 140, it appears that the receiver was appointed August 26, 1874. On October 3, 1874, an order was made directing the payment of traffic balances accruing before the appointment of the receiver. And the order was sustained. I quote at length from the opinion, because it bears upon a question yet to be considered:

"In respect to the $1,000 due other and connecting lines of the road for materials and repairs, and for ticket and freight balances, a part of which, as stated, was incurred more than ninety days before the twenty-sixth of August, 1874, the first petition stated that payment of that class of claims was indispensable to the business of the road, and that, unless the receiver was authorized to provide for them at once, the business of the road would suffer great detriment. These reasons were satisfactory to the court. In the examination by the master of the accounts of the receiver evidence was taken as to the payment by him of items due, when he took possession, for operating expenses, and of moneys due other and connecting lines for the matters named. The report of the master shows that he disallowed several items in the receiver's accounts, claimed under the above heads, where the claims were made on the ground that the creditors threatened not to furnish any more supplies on credit unless they were paid the arrears. His action, sanctioned by the court, in allowing items within the scope of the orders of the court, appears to have been careful, discriminating, and judicious, so far as the facts can be arrived at from the record. It cannot be affirmed that no items which accrued before the appointment of a receiver can be allowed in any case. Many circumstances may exist which may make it necessary and indispensable to the business of the road and the preservation of the property for the receiver to pay pre-existing debts of certain classes out of the earnings of the receivership, or even the *corpus* of the property, under the order of the court, with a priority of lien; yet the discretion to do so should be exercised with very great care. The payment of such debts stands, *prima facie*, on a different basis from the payment of claims arising under the receivership, while it may be brought within the principle of the latter by special circumstances. It is easy to see that the payment of unpaid debts for operating expenses, accrued within ninety days, due by a railroad company suddenly deprived of the control of its property, due to operatives in its employ, whose cessation from work simultaneously is to be deprecated in the interests both of the property and of the public, and the payment of limited amounts due to other and connecting lines of road for materials and repairs, and for unpaid ticket and freight balances, the outcome of indispensable business relations, where a stoppage of the continuance of such business relations would be a probable result in case of non-payment, the general consequence involving largely, also, the interest and accommodation of travel and traffic, may well place such payments in the category of payments to preserve the mortgaged property in a large sense, by maintaining the good-will and integrity of the enterprise, and entitle them to be made a first lien. This view of the public interest in such a highway for public use as a railroad is, as bearing on the maintenance and use of its franchises and property in the hands of a receiver, with a view to public convenience, was the subject of approval by this court, speaking through Mr. Justice Woods, in *Barton* v. *Barbour*, 104 U. S. 126."

I think, therefore, that the mere omission to make the payment of these claims a condition of the appointment of a receiver is no bar to

their present allowance; and I may add this further suggestion: It is said that the court, as a condition of the appointment of a receiver, may, in his discretion, require the payment of certain claims; but that discretion is not an arbitrary one. It may not require the payment of any claims that it desires, but only such claims as it is equitable should be paid,—claims that, in equity, are paramount to those of the mortgagees,—and if it is equitable that these claims should be paid prior to the mortgage debt, then what difference can there be in the mere time of making an order therefor? In all cases the payment of such claims rests on the fact that it is equitable that they should be paid, and oftentimes this equity can only be determined upon a full investigation into their nature,—an investigation which cannot be had at the time the receiver is appointed.

What claims are entitled to such equitable preference? The master has reported in favor of all claims accruing since the default in payment of the interest on the mortgage debt,—a period of over two years. This seems to proceed upon the assumption that the mortgagees, by failing to take action, have made the mortgagor company their agent to incur debts; have impliedly consented that all such debts should take preference of their secured claims. I do not think that this principle is sound. There is no implied agency to that extent, and I do not think that the rulings of the supreme court are based upon any such doctrine. The idea which underlies them I take to be this: that the management of a large business, like that of a railroad company, cannot be conducted on a cash basis. Temporary credit, in the nature of things, is indispensable. Its employes cannot be paid every month. It cannot settle with other roads its traffic balances at the close of every day. Time to adjust and settle these various matters is indispensable. Because, in the nature of things, this is so, such temporary credits must be taken as assented to by the mortgagees, because both the mortgagees and the public are interested in keeping up the road, and having it preserved as a going concern, and whatever is necessary to accomplish this result must be taken as assented to by the mortgagees. In this view, such temporary credits accruing prior to the appointment of the receiver must be recognized by the mortgagees and such claims preferred. Now, for what time prior to the appointment of a receiver may these credits be sustained? There is no arbitrary time prescribed, and it should be only such reasonable time as, in the nature of things and in the ordinary course of business, would be sufficient to have such claims settled and paid. Six months is the longest time I have noticed as yet given. Ordinarily I think that is ample. Perhaps, in some large concerns, with extensive lines of road and a complicated business, a longer time might be necessary. Certainly, so far as the present road is concerned, six months is ample. If any person permits a claim to continue longer than that he certainly has no right to be considered other than as a general creditor, with no preference over a secured

debt. So I think the exceptions must be sustained as to all claims accruing prior to six months before the appointment of a receiver.

One other matter requires notice. Out of what shall these claims be paid? Primarily, of course, out of the earnings of the road, and ordinarily out of such earnings alone. It is true, as appears from the quotation just made from the supreme court, that cases may arise in which such claims will be made a lien upon the *corpus* of the property, and payable out of the proceeds of receiver's certificates. But this can be done only in exceptional cases, and where there is special equity therefor. Apparently, this matter has not been considered by the master; and if any order is desired further than the payment of all these claims out of the earnings of the road, the matter will be referred back to the master for inquiry as to whether there exists any special equity justifying the payment of these claims, or any one of them, out of the proceeds of the receiver's certificates. The general rule, as I have stated, is that such claim should be paid out of the earnings. That is fair; because, if no receiver were appointed, and the claimants attempted by legal process to enforce the collection of their claims, they could obtain no priority over the mortgages, but must still be subject to such mortgages. So the appointment of a receiver ought not to give them a priority which they had not before. It is true, a special equity, as stated by the supreme court, may exist, making such claims a prior lien upon the *corpus* of the property; but, as I have said, such equity ought to be affirmatively shown. I believe this covers all the points that were argued before me. The order, therefore, will be that the exceptions will be maintained to all claims accruing more than six months prior to the appointment of a receiver. The exceptions to the other allowances will be overruled, and an order entered that they be paid out of the earnings of the road; and if in any particular claim it is thought by the claimant that there is a special equity which justifies its payment out of the proceeds of the receiver's certificates, such claims will be referred back to the master for examination in that respect.

---

*Fosdick* v. *Schall*[1] is the leading case upon the relative rights of secured and unsecured creditors of railroads which have been placed in the hands of receivers. After an exhaustive argument by some of the best legal minds of the country, the supreme court of the United States arrived in that case at unanimous conclusions. Those conclusions were announced by Mr. Chief Justice WAITE, whose opinion contains a statement of most of the great leading principles governing this delicate, difficult, and most important subject, and though much of what he said may be characterized as *dicta*, yet the opinion delivered is entitled to be considered a deliberate and careful expression of what the court considered to be the law of this whole subject, and the principles then enunciated have since been applied by that and other tribunals, and have been everywhere approved.

[1] 99 U. S. 235, (1878.)

EXTENT TO WHICH MORTGAGE COVERS INCOME AND FUNDS DERIVED THEREFROM. One of the most important of the rules laid down in *Fosdick* v. *Schall*[1] is that even where a mortgage on a railroad gives a lien on the income of the road in express terms, the income out of which the mortgagee is entitled to be paid, while out of possession, "is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipments, and useful improvements. Every railroad mortgagee," said the court, "in accepting his security impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim upon the income." It follows from this that persons to whom debts are due at the time a mortgaged road goes into the hands of a receiver for "necessary operating and managing expenses, proper equipments, and useful improvements, are entitled to a priority over mortgage creditors as to any fund derived from income which may be received by the receiver from the company.[2]

RULE AS TO CORPUS OF THE MORTGAGED PROPERTY. As a general rule, the rights of first mortgage creditors are superior to those of creditors of any other class, so far as the *corpus* of the mortgaged property is concerned. No lien equal to theirs can be given by the mortgagor to material-men, or others to whom debts may become due, for current expenses, even by an express mortgage.[3] But the lien of mortgage creditors only extends to the interest of the mortgagor; and, where the mortgage is made to cover after-acquired property, a lien for the purchase-money retained upon supplies sold, the mortgagor, after the execution of the mortgage, will take precedence of the mortgage lien, if the supplies furnished are not affixed to the realty.[4] If so affixed, the mortgage lien attaches, and takes precedence.[5] There are only two exceptions, so far as *ante*-receivership debts are concerned, to the general rule as to the superiority of the mortgage lien: The first is that, where current earnings have been used by the officers of a company for the benefit of mortgage creditors in paying bonded interest, purchasing additional equipments, or making permanent improvements on the fixed property, the mortgage security is chargeable, in equity, with the restoration of the fund thus improperly diverted.[6] The second exception is that, where it is necessary to pay employes back wages in order to retain their services, or to pay a debt for *ante*-receivership operating expenses in order to maintain business relations with the claimant, and the retention of such employes, or the maintenance of such relations, as the case may be, is indispensable to the welfare of the road, and such debts cannot be paid out of income, the receiver may be authorized to raise the necessary funds by issuing certificates of indebtedness, which shall take precedence of first-mortgage bonds.[7]

APPLICATION OF THE INCOME OF THE RECEIVERSHIP TO THE PAYMENT OF ANTECEDENT DEBTS. In *Fosdick* v. *Schall*[8] the proposition was laid down that "when a court of chancery is asked by railroad mortgagees to appoint a receiver of railroad property, pending proceedings for foreclosure, the

[1] 99 U. S. 252. See, also, Gilman v. Illinois & M. Tel. Co. 91 U. S. 603, (1875;) American Bridge Co. v. Heidelbach, 94 U. S. 798, (1876;) Galveston Railroad v. Cowdrey, 11 Wall. 459, (1870.)

[2] American Bridge Co. v. Heidelbach, 94 U. S. 798, (1876;) Gilman v. Illinois & M. Tel. Co. 91 U. S. 603, (1875.)

[3] Galveston Railroad v. Cowdrey, 78 U. S. 459, (1870;) Meyer v. Johnston, 53 Ala. 237, (1875.)

[4] Galveston Railroad v. Cowdrey, 78 U. S. 459, (1870;) Myer v. Car Co. 102 U. S.

[line] 1, (1880;) U. S. v. Railroad Co. 12 Wall. 362, (1870.)

[5] Dunham v. Railway Co. 68 U. S. 254, (1863.) Contra, Collins v. Central Bank, 1 Ga. 435, (1846.)

[6] Fosdick v. Schall, 99 U. S. 253, '254; Burnham v. Bowen, 111 U. S. 783, S. C. 4 Sup. Ct. Rep. 675, (1884.)

[7] Miltenberger v. Logansport Ry. Co. 106 U. S. 286; (1882;) S. C. 1 Sup. Ct. Rep. 140.

[8] 99 U. S. 251 et seq.

court, in the exercise of a sound judicial discretion, may, as a condition of issuing the necessary order, impose such terms in reference to the payment from the income during the receivership of outstanding debts for labor, supplies, equipment, or permanent improvement of the mortgaged property, as may, under the circumstances of the particular case, appear to be reasonable;" and "that if no such order is made when the receiver is appointed, and it appears in the progress of the cause that bonded interest has been paid, additional equipments provided, or lasting and valuable improvements made, out of earnings which ought in equity to have been employed to keep down debts for labor, supplies, and the like, it is within the power of the court to use the income of the receivership to discharge obligations which, but for the diversion of funds, would have been paid in the ordinary course of business."

In *Hale* v. *Frost* [1] the supreme court went a step further and held "that the net earnings of the road while in possession of the court, and operated by its receiver, are not necessarily and exclusively the property of the mortgagees, but are subject to the disposal of the chancellor in the payment of claims which have superior equities, if such be found to exist," and that the claims of certain parties who had furnished supplies to the road after default in the payment of interest were entitled to be paid in full before any part of the income was applied to the payment of mortgage creditors.

There had been no diversion of the current debt fund in that case without the application of income out of which the debts in question might have been paid, to the payment of antecedent current debts due at the time of the first default in the payment of interest, can be denominated a diversion.

In the latest case in point, *Burnham* v. *Bowen*, [2] in which, as in the *Fosdick* v. *Schall* and *Hale* v. *Frost*, the opinion was delivered by Mr. Chief Justice WAITE, the supreme court of the United States has carried the doctrine of *Fosdick* v. *Schall* to its ultimate conclusion, and laid down a tolerably clear and explicit rule upon this subject. After quoting the rule laid down in *Fosdick* v. *Schall*, that "the income out of which a railroad mortgagee is to be paid is the net income obtained by deducting from the gross earnings what is required for necessary operating and managing expenses, proper equipment, and useful improvements," and that "every railroad mortgagee, in accepting his security, impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before he has any claim on the income," the chief justice proceeded: "Such being the case when a court of chancery, in enforcing the rights of mortgage creditors, takes possession of a mortgaged railroad and thus deprives the company of the power of receiving any further earnings, it ought to do what the company would have been bound to do if it had remained in possession; that is to say, pay out of what it receives from earnings all the debts which in equity and good conscience, considering the character of the business, are chargeable upon such earnings. In other words, what may properly be termed the debts of the income, should be paid from the income before it is applied in any way to the use of the mortgagees. The business of a railroad should be treated by a court of equity, under such circumstances, as a 'going concern,' not to be embarrassed by any unnecessary interference with the relations of those who are engaged in or affected by it."

In this last case the court expressly held that though there had been no diversion by the company of the current earnings from the payment of the current expenses, a debt incurred over eleven months before the appointment of a receiver, for coal used in the company's locomotives, should be paid out of the income of the receivership, upon the ground that it was a debt which it would have been the company's duty to pay out of the net earnings if the re-

[1] 99 U. S. 389, (1878.)     [2] 4 Sup. Ct. Rep. 677, (1884.)

ceiver had not been appointed.[1] The rule laid down in *Burnham* v. *Bowen* commends itself by its clearness, but that case, like the others from which I have quoted, furnishes no test by which we may distinguish between current debts entitled to be paid out of current income and those which have fallen into the mass of ordinary floating debts, and ceased to be entitled to any preference.[2] The real question in such cases seems to be whether or not the debt is stale. *Vigilantibus non dormientibus æquitas subvenit.* If the claimant has been guilty of laches, no preference will be allowed. It is difficult, if not impossible, to lay down any fixed rule or rules as to when claims should be considered stale. Each case must be governed by the particular facts which appear therein. The limit of six months fixed in the principal case does not seem to be supported by the authorities.

The following are cases in which a preference has been allowed claims more than six months old: In *Douglass* v. *Cline*[3] the company had defaulted in the payment of bonded interest more than eight months before the appointment of a receiver, and wages earned after the default were ordered to be paid out of the net income of the receivership, though no special equities appeared. In *Skiddy* v. *Railroad Co.*[4] unassigned claims for labor performed during the 12 months prior to the receiver's appointment were allowed against the receiver's net income. In *Williamson's Adm'r* v. *Washington City, V. M. & G. S. R. Co.*[5] claims for services rendered and materials furnished in 1874 and 1875 were allowed a preference, though no receiver had been appointed until June, 1876. In *Atkins* v. *Railroad Co.*[6] a railroad company, being unable to pay its employes, obtained a loan of the amount due for wages from certain bondholders, to whom notes for the amount loaned were given. The loan was made in order to prevent an impending strike, and upon the condition that the amount loaned should be applied to the payment of the wages then due, and that the notes given the lenders should be paid out of the first net income of the road. A receiver was appointed about 22 months after the debt was incurred, and it was held that the net income of the receivership should be applied towards the repayment of the loan.[7] And in *Hale* v. *Frost*[8] a claim for materials furnished before default in the payment of bonded interest, and about three years before the appointment of a receiver, but for which a note had been given, which only matured about 16 months before a receiver was appointed, was allowed against a fund in court.

On the other hand, it has been held that an order appointing a receiver which authorized him "to pay the amounts due and maturing for materials and supplies about the operation and for the use of" a road, did not authorize him to pay a renewed promissory note given for re-rolling iron for the use of the road three years before his appointment.[9] So, where the president and directors of a road had contracted a debt for supplies and repairs in 1874 and

[1] The debt was evidenced at the time the receiver was appointed by business paper of the company, maturing at a future date, and this paper was renewed at maturity, but whether by order of court or not does not appear.

[2] Debts of the latter class are never paid out of the receiver's income. Duncan v. Railroad Co. 2 Woods, 542, (1876;) Brown v. Railroad Co. 19 How. Pr. 84, (1860;) Huidekoper v. Locomotive Works, 99 U. S. 258, (1878.)

[3] 12 Bush, 608, (1876.)

[4] 3 Hughes, C. C. 320, (1879.) It has since been held that assigned and unassigned claims stand upon the same footing. Union Trust Co. v. Walker, 107 U. S. 596, (1882.)

[5] 33 Grat. 624, (1881.)

[6] 3 Hughes, C. C. 307, (1879.)

[7] Persons who lend money for payment of bonded interest are not entitled to any preference. Railroad Co. v. Douglass, 12 Bush, 673, (1877.)

[8] 99 U. S. 389, (1878.) A claim for materials furnished for construction purposes was disallowed, but for the reason, as it seems, (33 Grat. 631,) "that this material was used in the construction of an independent branch road." See, also, Union Trust Co. v. Souther, 107 U. S. 591, (1882;) S. C. 2 Sup. Ct. Rep. 295; Taylor v. Railroad Co. 7 Fed. Rep. 377, (1880.)

[9] Brown v. Railroad Co. 19 How. Pr. 84, (1860.)

1875, for which third persons had become liable, it was held, in a foreclosure suit instituted in 1876, that the debt was not entitled to any preference.[1] And in another case it has been held that a receiver is not bound to comply with contracts for the transportation of freight entered into by the company before his appointment.[2]

In *Turner* v. *I., B. & W. Ry. Co.*[3] the court adopted by analogy the rule of the state statutes in relation to liens on railroads for work done, and supplies and materials furnished.

Assigned and unassigned claims stand upon an equal footing.[4]

POWERS OF COURTS OF EQUITY IN THE MANAGEMENT OF RAILROAD PROPERTY. A receiver has no authority to incur any expenses on account of property in his hands beyond what is absolutely essential to its preservation and use, as contemplated by his appointment, unless authorized by an order of court.[5] Nor can he charge the *corpus* of the mortgaged property with the payment of any debts which he may make.[6] But he may, by an express order, be authorized to go much farther. It is difficult, indeed, to name a limit beyond which the courts will not go when they deem it expedient.

A court of equity, which has taken possession of a railroad in a foreclosure suit, not only has all the power possessed by the company before the institution of the suit,[7] but much more, for it may authorize its receiver "to raise money necessary for the preservation and management of the property, and make the same a (first) lien thereon for its repayment."[8] It may even authorize the building of bridges, and the completion of the road, if unfinished, and its completion appears to the court to be for the benefit of all concerned, and may authorize its receiver to raise the necessary funds by issuing certificates of indebtedness which shall be a first lien on the mortgaged property payable before the first mortgage bonds.[9] BENJ. F. REX.

*St. Louis, Mo.*

---

[1] Duncan v. Railroad Co. 2 Woods, 542, (1876.)

[2] Ellis v. Railroad Co. 107 Mass. 1, (1871.) It will be observed that the decision in this case was prior to that of the United States supreme court in Burnham v. Bowen, and, in view of the latter case, a different conclusion might now be arrived at.

[3] 8 Biss. C. C. 315.

[4] Union Trust Co. v. Walker, 107 U. S. 596, (1882;) S. C. 2 Sup. Ct. Rep. 299.

[5] Cowdrey v. Railroad Co. 93 U. S. 354, (1876.) Damages suffered by a party who has been injured through the negligence of the receiver's employes are considered part of the current expenses, and are chargeable upon the income. Barton v. Barbour, 104 U. S. 126, (1881.)

[6] Hand v. Railroad Co. 17 S. C. 219, (1881;) Vermont & C. R. Co. v. Vermont Cent. R. Co. 50 Vt. 500, (1877.)

[7] Miltenberger v. Logansport Ry. Co. 106 U. S. 286, (1882;) S. C. 1 Sup. Ct Rep. 140; Gibert v. Railroad Co. 33 Grat. 586, (1880.)

[8] Wallace v. Loomis, 97 U. S. 146, (1877;) Miltenberger v. Logansport Ry. Co. 106 U. S. 286; S. C. 1 Sup. Ct. Rep. 140; Langdon v. Railroad Co. 54 Vt. 593, (1882.)

[9] Wallace v. Loomis, 97 U. S. 146; Miltenberger v. Logansport Ry. Co. 106 U. S. 286; S. C. 1 Sup. Ct. Rep. 140; Kennedy v. Railroad Co. 2 Dill. 448, (1873;) Gibert v. Railroad Co. 33 Grat. 586, (1880.)