CENTRAL TRUST CO. OF NEW YORK *v.* TAPPAN *et al.*

(*Supreme Court, General Term, Fourth Department.* July 20, 1889.)

1. RECEIVER'S CERTIFICATES—WHEN ISSUED.
    Where it appears that a railroad company for which a receiver has been appointed is without credit or funds, and has no rolling stock except one locomotive on which there is a vendor's lien, and one car for which a high rental is being paid, the court has discretion to order the receiver to issue certificates of indebtedness, for the purpose of obtaining money to properly care for and operate the road.

2. SAME—LIENS.
    Such certificates are paramount liens.

Appeal from special term, Onondaga county.

The Syracuse & Baldwinsville Railroad Company executed its mortgage to the Central Trust Company, bearing date July 1, 1886, to secure the bonds of the road, amounting to $160,000, and the coupons attached thereto, which mortgage was recorded in the clerk's office of the county of Onondaga on September 2, 1886. A default having occurred, this action was commenced to foreclose the said mortgage. Floyd F. Bentley was appointed receiver and took possession of the property of the defendant company on January 26, 1889, having duly filed his bond, and in virtue of the order appointing him such receiver he has operated the railroad, and filed a report showing the condition of the property, and an inventory thereof. On February 6, 1888, a judgment was recovered by William W. Downer, against the defendant, for $1,996.28. The judgment was recovered by default, the default was opened, and the judgment was allowed to stand as security, and an execution issued thereon, and Wallace Tappan was substituted as plaintiff by order of the court, and on February 28, 1889, he recovered a judgment against the railroad company for the sum of $1,721.86. The levy in virtue of the execution was on February 8, 1888. Bentley, the receiver, verified his petition on February 26, 1889, in which the exigencies of the property which came into his hands were stated, and a motion was made upon the petition and the other papers at special term on March 2, 1889, for an order to authorize the issue of receiver's certificates. Upon the hearing of the motion, Tappan, by his counsel, appeared and objected to an order allowing the certificates to be issued unless

the receiver was directed to pay the judgment so held by Tappan out of any proceeds of any certificates issued, and Tappan asked leave "to proceed and enforce the levy of said execution as he may be advised." An order was granted authorizing the receiver to issue certificates of indebtedness to an amount not exceeding $8,000. The receiver was directed "to expend the money realized from such certificates, or so much thereof as may be necessary for the purposes of this order, in making necessary and economical repairs to the track and road-bed of said railroad company, and in the purchase of such new material for the running and operating of said road as the exigencies of the case may demand, and in paying the amount remaining due and unpaid upon and for a locomotive engine now in the possession of said receiver, and received by him at the time of his appointment with the other rolling stock and equipments; and that he also use and appropriate said money in the purchase of such other equipments, supplies, tools, and machinery as may be necessary to maintain and operate said railroad, and to pay all claims for mileage, labor, and supplies furnished said receiver from and after January 26, 1889, the day of his appointment, and all money advanced by him for such purpose, and all taxes due or to become due, and for the expense of said receivership in the operation of said road." The trust company and some of the bondholders defend the order that was made. Tappan appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Hunt & Everson*, (*John C. Hunt*, of counsel,) for appellant, Tappan. *Johnson, Gallup & Hurry*, (*Albert Gallup*, of counsel,) for receiver. *Butler, Stillman & Hubbard*, for the Central Trust Company. *George W. Traynor*, for the Syracuse & Baldwinsville Railroad Company.

HARDIN, P. J. After the property passed into the possession of the receiver, he held the same as an officer of the court, subject to its direction and control. The power of the court to authorize a receiver to issue certificates of indebtedness, and to borrow money thereon to be used for the purposes mentioned in the petition, existed. *Raht* v. *Attrill*, 106 N. Y. 436, 13 N. E. Rep. 285; *Wallace* v. *Loomis*, 97 U. S. 146. In the *Raht Case* the court recognizes the "right of the court to provide for the payment of certain debts contracted before or after the appointment of a receiver out of the income, and, if that is inadequate, out of the *corpus* of the property." The petition and affidavit used at the special term did not fall "short of disclosing any extraordinary emergency which called for extraordinary methods for the preservation of its property." Opinion of ANDREWS in *Raht* v. *Attrill*, page 432, 106 N. Y., and page 284, 13 N. E. Rep. In the case from which we have just quoted such a disclosure was not made, and therefore the order fell. In this case there was no money in the treasury, and there was no working capital on hand to pay current expenses, and the railroad company was without credit, had no rolling stock, excepting a locomotive, upon which there was a vendor's lien of $4,775, and one car for which a very high rental was being paid, when the receiver came into possession of the property. For its proper preservation and ordinary operation he needed moneys to protect the interest of all parties interested in the same. Under such circumstances we incline to the opinion that the discretion of the special term took the proper direction. We think the case of *Fosdick* v. *Schall*, 99 U. S. 235, is authority for declaring the certificates authorized, paramount liens. The same principle was asserted in *Kennedy* v. *Railroad Co.*, 2 Dill. 448. Because it appears to us that the plaintiff, the trustee, and the railroad company and the receiver and bondholders do not question the order, we need not pass upon any question which might be made in their behalf in respect to the order. As against the appellant Tappan we think the order was right, and we therefore affirm the same, with costs. Order affirmed, with $10 costs and disbursements.

MERWIN, J., concurs.

MARTIN, J., (*concurring.*) A lien upon the property of the Syracuse & Baldwinsville Railroad Company was acquired by the appellant under and by virtue of a judgment entered February 6, 1888, an execution issued thereon, and a levy thereunder made February 8, 1888. It is true, this judgment was by default, and that the default was subsequently opened, but the judgment, execution, and levy were permitted to stand as security for the judgment subsequently rendered. The receiver in this action was appointed January 23, 1889, and took possession of the property of the railroad company on the 26th of the same month. The first judgment was entered nearly a year before the receiver was appointed. It was under and by virtue of the execution issued upon that judgment that the sheriff, on February 8, 1888, levied upon the property of the railroad company, and it was then that a lien was acquired, which was to remain as security for the judgment subsequently obtained. While the appellant's right to enforce his judgment by a sale on execution against the property which had come into the hands of the receiver may have been affected by such appointment, still the lien of his execution was not thereby destroyed. *Walling* v. *Miller*, 108 N. Y. 173, 15 N. E. Rep. 65. If the court was authorized to make the order appealed from, it must, I think, be justified upon other grounds than that the receiver acquired title prior to the appellant's lien. It seems to be well settled that the court may, in an action like this, direct the payment by a receiver of the debts of a corporation for labor and supplies, and the payment of traffic balances in favor of connecting roads, and may direct a receiver to operate the road pending foreclosure, and make improvements thereon and charge the expense thereof on the property prior to the legal liens. *Wallace* v. *Loomis*, 97 U. S. 146; *Fosdick* v. *Schall*, 99 U. S. 235; *Barton* v. *Barbour*, 104 U. S. 126; *Miltenberger* v. *Railroad Co.*, 106 U. S. 286, 1 Sup. Ct. Rep. 140; *Trust Co.* v. *Souther*, 107 U. S. 591, 2 Sup. Ct. Rep. 295; *Burnham* v. *Bowen*, 111 U. S. 776, 4 Sup. Ct. Rep. 675; *Trust Co.* v. *Railway Co.*, 117 U. S. 434, 6 Sup. Ct. Rep. 809. An examination of these cases discloses that the asserted power of the court to authorize a receiver to create a liability which shall have preference over the other debts of a corporation is based upon the duty of the court (1) to protect and preserve the trust property in its hands for the benefit of all the parties interested; and (2) to protect the interests and rights of the public. In *Wallace* v. *Loomis*, 97 U. S. 162, it is said: "The power of a court of equity to appoint managing receivers of such property as a railroad, when taken under its charge as a trust fund for the payment of incumbrances, and to authorize such receivers to raise money necessary for the preservation and management of the property, and make the same chargeable as a lien thereon for its repayment, cannot at this day be seriously disputed. It is a part of that jurisdiction always exercised by the court by which it is its duty to protect and preserve the trust funds in its hands." The same principle is asserted and recognized in most of the other cases cited. In *Barton* v. *Barbour*, 104 U. S. 135, Mr. Justice WOODS, in delivering the opinion in that case, says: "A railroad is authorized to be constructed more for the public good to be subserved than for private gain. As a highway for public transportation it is a matter of public concern, and its construction and management belong primarily to the commonwealth, and are only put into private hands to subserve the public convenience and economy. But the public retain rights of vast consequence in the road and its appendages, which neither the company nor any creditor or mortgagee can interfere with. They take their rights subject to the rights of the public, and must be content to enjoy them in subordination thereto. It is therefore a matter of public right by which the courts, when they take possession of the property, authorize the receiver or other officer in whose charge it is placed to carry on in the usual way those active operations for which it was designed and constructed, so that the public may not receive detriment by the non-user of the franchises; and in most cases the

creditors cannot complain, because their interest as well as those of the public is promoted by preventing the property from being sacrificed at an untimely sale, and protecting the franchises from forfeiture for non-user. ❊ ❊ ❊ It has come to be settled law that a court of equity may, and in most cases ought, to authorize its receiver of railroad property to keep it in repair and to manage and use it in the ordinary way until it can be sold to the best advantage of all interested." This doctrine is also affirmed in *Trust Co.* v. *Railway Co.*, 117 U. S. 458, 6 Sup. Ct. Rep. 809; and in *Miltenberger* v. *Railroad Co.*, 106 U. S. 311, 312, 1 Sup. Ct. Rep. 140. The doctrine of these cases was recognized in the case of *Raht* v. *Attrill*, 106 N. Y. 436, 13 N. E. Rep. 285. That the order granted was necessary for the proper protection and preservation of the property and franchises of the company, and to protect the interests and rights of the public, was abundantly established by the papers read on this motion. I am therefore of the opinion that the order should be affirmed, not upon the ground of any priority of title acquired by the receiver, but upon the ground that it was necessary to the preservation of the company property and franchises, and to the protection of public interests. These views lead me to concur in the result of the opinion of Mr. Justice HARDIN.