### ATCHISON, T. & S. F. RY. CO. v. OSBORN.

(Circuit Court of Appeals, Eighth Circuit. October 16, 1906.)

No. 2,336.

**1. RECEIVERS—ORDER APPOINTING—EFFECT OF PROVISIONS.**

An interlocutory order appointing receivers for a railroad confers no vested rights on any outside creditor and makes no provisions which cannot be modified or changed later or in the final decree.

[Ed Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 91, 114; vol. 41, Railroads, § 678.]

**2. SAME—FORECLOSURE PROCEEDINGS—UNSECURED CLAIMS.**

The income of a railroad, while in the hands of receivers, is subject to equitable charges of a different character from those to which the fund realized from a sale of the corpus of the property is subject.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 272–311; vol. 41, Railroads, §§ 692, 693.]

**3. SAME—RIGHT TO PRIORITY OVER MORTGAGES.**

Holders of unsecured claims for damages, arising from negligence of a mortgagor railroad company prior to the appointment of receivers, have no equity which entitles them to priority of payment over the mortgage creditors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 293–311; vol. 41, Railroads, § 693.]

**4.** RAILROADS –FORECLOSURE OF MORTGAGE –CONSTRUCTION OF DECREE––RE-
CEIVERSHIP.

An interlocutory decree appointing receivers for a railroad in a fore-
closure suit directed them to pay from the earnings of the road all just
and legal liabilities of the company incurred in the transportation of
freight and passengers within the preceding 12 months, including dam-
ages for injuries to employés or other persons and to property. The final
decree, order of sale, and order of confirmation required the purchasers
or their assigns to pay, in addition to the price bid, any indebtedness and
liabilities contracted or incurred by the mortgagor company in the op-
eration of its railroad prior to the appointment of the receivers, "which
are prior in lien to said general mortgage," upon the court adjudging
the same to be prior in lien to said mortgage, and reserved jurisdiction
of the cause for the purpose of adjusting such claims, giving the pur-
chasers or their assigns the right to appear and defend against the same
and the right of appeal from the decision thereon. *Held*, that a claim-
ant of an indebtedness or liability of the old company, who had not se-
cured payment thereof out of the earnings of the road while in the hands
of the receivers, as provided by the interlocutory decree, could compel
payment by the purchasers or their assigns only by establishing on
principles of equity that his demand was prior in lien to the mortgage,
on a hearing in conformity to the provisions of the final decree.

Appeal from the Circuit Court of the United States for the District
of Kansas.

On December 23, 1893, the Union Trust Company of New York, as trustee
under the general mortgage before then made by the Atchison, Topeka &
Santa Fé Railroad Company filed its bill in the Circuit Court of the United
States for the District of Kansas against the railroad company to foreclose
the mortgage. On that day an order was made in the cause appointing
receivers to take possession of, hold, and manage the railroad pending the
litigation. That order was first made upon a condition that all liabilities
of the railroad company, including, among others, damages for injuries to
employés or other persons and to property which had accrued within 12 months
before that date, should constitute a lien upon the railroad property para-
mount to the lien of the mortgage, and requiring such liabilities, if not paid
by the receivers out of the earnings, to be paid out of the proceeds of the
sale of the road.

Subsequently, and on January 10, 1894, the order was modified so as to
read as follows: "And it appearing to the court that the defendant company
owes debts and has incurred liabilities which the holders thereof could,
without any interference with the legal or equitable rights of the complainant
under the mortgage set out in the bill, collect by proceedings at law from said
defendant by seizing its rents, income, and earnings, and in other lawful
modes, if not restrained from so doing by this court, and that it would
be inequitable and unjust for the court to deprive said creditors of their
legal right to collect their several debts, by appointing receivers to take
and receive the earnings of said road during the pendency of this suit, as
prayed by the complainant, without making suitable provision for the pay-
ment of such debts and liabilities, the receivers herein are therefore further
directed to pay all just and legal debts, demands and liabilities due or owing
by the defendant company which accrued or were incurred for work, labor,
materials, machinery, fixtures and supplies of every kind and character,
done, performed or furnished in the improvement, equipment or operation
of said road and its branches, and all just and legal liabilities incurred by
the said company in the transportation of freight and passengers, including
damages for injuries to employés or other persons and to property which
have accrued, or upon which suit has been brought or was pending, or judg-
ment rendered within twelve months last past, and all liability of said com-
pany to persons or corporations who may have become sureties for said
company on stay, supersedeas or cost bonds, or bonds in garnishment pro-
ceedings, or other bonds of like character, without regard to the date of
such bonds; and also all liabilities to persons or corporations who may have

become liable by indorsement, guaranty or otherwise, for the debts of said company on account of money borrowed by said company to pay operating expenses; and also all just and legal debts and liabilities which the said receivers may incur in operating said road, including claims for injury to persons and property. The receivers are authorized and directed to pay all such debts and liabilities, as the same shall accrue, out of the earnings of the road."

Afterwards, on August 27, 1895, after that suit had been consolidated with two others, a final decree of foreclosure and sale was entered. That decree contained, among other things, the following provisions: "The purchaser or purchasers, his or their successors and assigns, shall as part considera- tion and purchase price of the property purchased, and in addition to the sum bid, take the same and receive the deed therefor upon the express condition that he or they, or his or their successor or assigns, shall pay, satisfy and discharge any unpaid compensation which shall be allowed by the court to the receivers, and all indebtedness and obligations or liabilities which shall have been legally contracted or incurred by the receivers before delivery of possession of the property sold, and also any indebtedness and liabilities contracted or incurred by said defendant railroad company in the operation of its railroads prior to the appointment of the receivers, which are prior in lien to said general mortgage, and payment whereof was provided for by the order of this court dated January 10, 1894, and filed January 16, 1894, and which shall not be paid or satisfied out of the income of the property in the hands of the receivers, upon the court adjudging the same to be prior in lien to said mortgage and directing payment thereof, provided that suit be brought for the enforcement of such indebtedness, obligation or liability within the period allowed by the statute of limitations of the state of Kansas for the commencement of such suit thereon after such indebtedness, obliga- tion or liability was contracted or arose. In the event that said purchaser or purchasers shall refuse, after demand made, to pay any such indebtedness, obligation or liability, the person holding the claim therefor, whether es- tablished in a state court or any other court of competent jurisdiction, may, upon fifteen days' notice to said purchaser or purchasers, their successors or assigns, file his petition in this court to have such claim enforced against the property aforesaid in accordance with the usual practice in relation to claims of a similar character; and such purchaser or purchasers, and his and their successors or assigns, shall have the right to appear and make defense to any claim, debt or demand so sought to be enforced, but either party shall have the right to appeal from any judgment, decree or order made thereon. And jurisdiction of this cause is retained by this court for the purpose of enforcing the foregoing provisions of this decree, and the court reserves the right to retake and resell said property in case the purchaser or purchasers, his or their successors or assigns, shall fail to comply with any order of the court in respect to the payment of such prior indebtedness, obligations or liabilities within thirty days after service of a copy of such order. Any such purchaser or purchasers, and his or their successors and assigns, shall have the right to enter his or their appearance in this court, or any other court, and he or they, or any of the parties of this suit, shall have the right to contest any claim, demand and allowance existing at the time of the sale and then undetermined, and any claim or demand which may arise or be presented thereafter, which would be payable by such purchaser or purchasers, his or their successors, or assigns, or which would be charge- able against the property purchased, in addition to the amount bid by such purchaser or purchasers at the sale, and may appeal from any decision re- lating to any such claim, demand or allowance."

Afterwards, on December 10, 1895, the property described and included in the mortgages foreclosed was sold by the special master appointed for that purpose to Edward King, Victor Morawetz, and Charles C. Beaman, and on that day the sale was confirmed by an order, which, among other things, contained the following: "And it appearing by such special master's report that he has fully complied with the directions of said [final] decree as to the sale of said property, and that such purchasers were the highest and best bidders for such railroad, property and franchises sold as a single parcel,

and that the same was struck off to them for the sum of sixty million dollars, subject, however, to the payment of the receivers' compensation, receivers' debts and other preferential liens and claims, as provided for in said decree, and to all and singular the terms and conditions in said decree set forth, * * * the court now orders and decrees that the said report of the said special master be in all things approved, and that the sale made by him * * * be and the same is in all things ratified, approved, confirmed and made absolute, subject, however, to the payment of the receivers' compensation, receivers' debts and preferential claims and to all equities reserved and to all and singular the conditions of purchase, as recited in such decree; and this court expressly reserves and retains jurisdiction of this cause and power to enforce all the provisions of said decree. * * *"

After reciting that the purchasers had deposited bonds and paid the money as required by the decree, the court proceeds in the order of confirmation and directs the special master to execute a deed conveying the railroad and its franchises to the purchasers, "subject, however, to the payment, satisfaction or discharge by such purchaser or purchasers, or their successors or assigns, of * * * all indebtedness and liabilities contracted or incurred by the said Atchison, Topeka & Santa Fé Railroad Company in the operation of its railroads prior to the appointment of the receivers, which are prior in lien to said general mortgage, and payment whereof was provided for by the order of this court dated January 10, 1894, and filed January 16, 1894, and which shall not be paid or satisfied out of the income of the property in the hands of the receivers, upon the court adjudging the same to be prior in lien to said mortgage and directing payment thereof."

Later, on December 12, 1895, the special master, acting under authority of the foregoing decree and order, executed a deed conveying to the purchasers the railroad and its franchises in which the sale was declared to be subject to the payment by the purchasers of the indebtedness and liabilities contracted or incurred by the old company in the operation of its railroads prior to the appointment of the said receivers, in exactly the same language as that found in the final decree and order of confirmation already quoted. Later the purchasers transferred the property by them acquired at the special master's sale to the appellant herein, the Atchison, Topeka & Santa Fé Railway Company, a new corporation created and organized for the purpose; made the transfer to it subject to the same conditions concerning the payment of debts and liabilities as were contained in the final decree, order confirming the sale, and master's deed.

Milo H. Osborn, the appellee, in 1892, prior to the institution of the foreclosure suit, instituted his action in the district court of Harper county, Kan., against the mortgagor, the Atchison, Topeka & Santa Fé Railroad Company, to recover damages for alleged negligent conduct of its agents and servants, resulting in the burning and destruction of his wheat crop stacked on his premises. This action, after protracted litigation in that and the Supreme Court of Kansas, resulted, in April, 1902, in a final judgment in the district court in his favor against the old company for $1,968.40. Afterwards, on March 10, 1903, Osborn filed in the Circuit Court of the United States for the District of Kansas, in which the original foreclosure proceeding was instituted and was then pending, his intervening petition praying that his judgment be ordered paid by the new railroad company without any inquiry as to whether it evidenced a debt prior in lien to the general mortgage, on the theory that the interlocutory and final decrees in the foreclosure suit imposed its payment upon the purchasers and their assigns as a part of the purchase price. In answer to the intervening petition, the appellant railway company admitted that Osborn had secured a judgment in the district court of Harper county, Kan., as alleged by him, but averred that it (the appellant) was not liable to pay the same under the decrees entered in the foreclosure suit. Upon the foregoing facts the Circuit Court ordered the appellant railway company to pay the Osborn judgment with interest, without any hearing or inquiry into the equity of the claim or whether it was in fact prior in lien to the original mortgage debt; the theory of the learned trial judge being that this demand was required to be paid by the original order of appointment of the receivers as a preferential demand.

148 F.—39

and that nothing occurred later in the final decree and confirmation of the sale to affect that obligation. The railway company appeals.

Robert Dunlap (Wm. R. Smith and Gardiner Lathrop, on the brief), for appellant.

I. P. Campbell (S. S. Sisson and H. C. Sluss, on the brief), for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The deed from the original purchasers of the railroad to the appellant, the Atchison, Topeka & Santa Fé Railway Company, obligates it to pay all the debts and liabilities which the original purchasers were required to pay. Accordingly, our inquiry is limited to a consideration of the obligations imposed upon the original purchasers; and, as this depends upon the construction to be placed upon the interlocutory and final decrees entered in the foreclosure suit, it becomes necessary to carefully consider them with the purpose of ascertaining their true meaning. In order to do so it is well first to advert to the state of law on the subject in question at the time the decrees were entered. It should be presumed that the chancellor passed all the orders and decrees in the light of, and conformably to, existing law. By that, their meaning may well be elucidated.

The order appointing the receivers was interlocutory only. Its function was to lay down a scheme for holding and operating the railroad pending the foreclosure suit. No claimant acquired any right to the property or its income by virtue of that order which might not be modified by later orders or by provisions of the final decree. In other words, no vested rights accrued to any such claimant by the provisions of that order. Kneeland v. American Loan Co., 136 U. S. 89, 97, 10 Sup. Ct. 950, 34 L. Ed. 379; Louisville, Evansville & St. Louis Railway Co. v. Wilson, 138 U. S. 501, 506, 11 Sup. Ct. 405, 34 L. Ed. 1023; Gregg v. Mercantile Trust Co., 48 C. C. A. 318, 109 Fed. 220, 226; Mather Humane Stock Transp. Co. v. Anderson, 22 C. C. A. 109, 76 Fed. 164. The income of a railroad while in the hands of a receiver is subject to equitable charges of a different character and for different reasons from those to which the corpus of the fund realized by a sale is subject. Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339; Union Trust Co. v. Souther, 107 U. S. 591, 2 Sup. Ct. 295, 27 L. Ed. 488; St. Louis, etc., Railroad Co. v. Cleveland, etc., Railway, 125 U. S. 658, 8 Sup. Ct. 1011, 31 L. Ed. 832; Gregg v. Metropolitan Trust Co., 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717; Blair v. St. Louis, etc., Railroad (C. C.) 22 Fed. 471. The lien created by the mortgage in favor of the bondholders was a vested right subject only to the payment of a few unsecured matured claims for operating expenses, equipment, and the like, necessary to equitably restore to unsecured creditors that which by the nonpayment of their claims when due amounted to a diversion of the fund in favor of the mortgage creditors; or, in the language of Mr. Justice Brewer in the Kneeland Case, subject only to the payment "of a few unsecured claims which by the rulings of this court have been

declared to have an equitable priority." Fosdick v. Schall, supra; Kneeland v. American Trust Co., supra; Gregg v. Metropolitan Trust Co., supra; Southern Railway v. Carnegie Steel Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458. Unsecured claims for damages arising from negligence of the mortgagor company before the appointment of receivers had not, before the decrees were made in this case, or since then, been recognized as conferring upon the holders an equity for their payment over the mortgage creditors. On the contrary, such claims had been declared by this court, when the learned chancellor who passed the decrees in this case was one of its honored members, not to be entitled to any such preferential right. St. Louis Trust Co. v. Riley, 16 C. C. A. 610, 70 Fed. 32, 30 L. R. A. 456. See, also, Atlantic Trust Co. v. Dana, 62 C. C. A. 657, 128 Fed. 209.

In the light of the foregoing well-settled propositions, the decrees now in question were entered. On their true interpretation depends the conclusion to be reached in this case. If the purchasers at the master's sale purchased the railroad and received deeds or conveyances thereof subject to the condition that they should pay all liabilities for damages incurred by the negligent operation of the road before the receivers were appointed, then the decree ordering the appellant railway company, which holds under and through them and subject to all their assumed liabilities, to pay the same, is right and should be affirmed.

It may readily be conceded that, by the interlocutory order appointing the receivers, the chancellor intended to subject the earnings or income resulting from the operation of the railroad to the payment, among other things, of claims like that of Osborn. In fact, by the first order made on December 23, 1893, before its modification on January 10, 1894, the chancellor in express words declared that the order appointing the receivers was made on condition that all demands and liabilities due or owing by the railroad, including damages for injuries to employés or other persons and to property, should be paid either out of the earnings of the road while in the hands of the receivers or out of other funds in the hands of the receivers, or, "if not sooner discharged, then the same shall be paid out of the proceeds of the sale of the road." But, as already seen, this order confers no vested rights upon any claimant and was quickly supplanted by another one. On January 10, 1894, doubtless out of deference to the then recently expressed opinion of Mr. Justice Brewer in Kneeland v. American Loan Company, supra, wherein he announced that courts had no right to make the appointment of a receiver conditional upon the payment of unsecured indebtedness, the modified order found in the statement of the case was made, eliminating the condition found in the order of December 23d, and also striking out that part of the order requiring the unsecured liabilities, if not sooner discharged, to be paid out of the proceeds of the sale of the road. It may reasonably be concluded that the chancellor, by the modification and correction of the interlocutory order, in the way just indicated, intended that such debts should not be paid out of the proceeds of the sale, or in fact in any way other than out of the earnings. We thus observe that, at the initiation of the proceedings, the chancellor discriminated in a marked manner between

payment out of income and out of proceeds of sale, and clearly, in the new order, limited the fund out of which payments should be made to the earnings of the road.

The claim in question not having been paid out of the earnings, it became subject to the provisions of the final decree. The chancellor, still bearing in mind the equitable rule he had recognized by the amendment of January 10, 1894, namely, that he could not lawfully arbitrarily impose upon the purchasers the condition of paying unsecured demands, or, in other words, require their payment out of the proceeds of the sale before the mortgage debt was satisfied, apparently adjusted the final decree to the requirement of that rule. The interlocutory order was now to be entirely superseded, and the rights of the parties were to be finally determined and a final decree entered fixing the same. What was done? The chancellor certainly does not order and decree that the purchasers shall pay as part consideration for and as a condition to securing title to the railroad, over and above the sum bid, "all indebtedness and liabilities contracted and incurred by the railroad in the operation of its road prior to the appointment of the receivers." If he had so intended, the words just quoted would have accurately expressed that intention. Nothing more would have been necessary. But he immediately qualified the general words used, by providing that the debts and liabilities to be paid by the purchasers should have a certain quality additional to that of having been incurred before the appointment of the receivers, namely, they should be such as "are prior in lien to said general mortgage"; and then, out of further and abundant precaution, and apparently for the purpose of providing for an adjudication of the question whether the required quality determinative of the right of priority in lien existed, he provided that they should be paid "upon the court adjudging the same to be prior in lien to said mortgage and directing a payment thereof."

Still further evincing a purpose to subject the purchasers to payment of only such debts as were in fact prior in lien to the general mortgage, the chancellor provided that, if such debts and liabilities are not paid on demand, the claimant may "file his petition in this court to have such claim enforced against the property"; but "such purchaser or purchasers and his or their successors or assigns shall have the right to make defense to any claim, debt or demand so sought to be enforced, and either party shall have the right to appeal from any judgment, decree or order made thereon." This clause cannot, in our opinion, mean what is contended for by appellee's counsel, that a claimant may present his petition to the Circuit Court merely for the purpose of having that court ascertain and find that it was a claim within the class mentioned in the interlocutory order of January 10, 1894, which was to be paid out of the earnings of the road. It obviously has a broader meaning. The petition was to be presented to secure an order for the enforcement of the claim, not against the earnings as only contemplated by the interlocutory order, but against the property itself in the hands of the purchasers or their assigns. In order to secure such an order, the claim must be shown to be prior in lien to the general mortgage. To meet an issue of that kind, the provision was made for bringing in the

purchasers or their assigns and conferring upon them the right to defend against the enforcement of the claim upon their property and to appeal from any adverse decision. This elaborate machinery for the institution of a proceeding and bringing the parties interested was not devised merely to ascertain that the claim belonged to a class which its very existence as a claim demonstrated.

The order confirming the master's sale and the deed executed by him each contain the identical language found in the final decree already referred to. It sems to us that the learned chancellor endeavored in those three documents most industriously to accurately discriminate in the kind of liabilities incurred before the appointment of the receivers which the purchasers were required to pay in addition to the sum bid by them for the property. The provisions seem to us to admit of no doubt as to their meaning. They carry the obvious implication that some debts or liabilities contracted or incurred by the old railroad prior to the appointment of the receivers were not of equitable cognizance and constituted no lien prior to the mortgage lien. Such was the settled law, and such the learned chancellor had himself declared in the Riley Case. The obvious purpose of the provisions above referred to, requiring only those debts to be paid which were "prior in lien to the general mortgage," and that, too, only "upon the court adjudging the same to be prior in lien thereto," was to distinguish between such as were not of that character, and therefore, under decisions well known to the chancellor, not entitled to take precedence over the mortgage creditors and those "few unsecured claims which by the rulings of the Supreme Court" were entitled to equitable priority.

Learned counsel for the appellee call attention to the following provisions of the interlocutory order appointing receivers:—

"And it appearing to the court that the defendant company owes debts and has incurred liabilities which the holders thereof could, without any interference with the legal or equitable rights of the complainant under the mortgage set out in the bill, collect by proceedings at law from said defendant by seizing its rents, income, and earnings, and in other lawful modes, if not restrained from so doing by this court, and that it would be inequitable and unjust for the court to deprive said creditors of their legal right to collect their several debts, by appointing receivers to take and receive the earnings of said road during the pendency of this suit, as prayed by the complainant, without making suitable-provision for the payment of such debts and liabilities."

—and earnestly urge that that preamble settles the law of the case, was unappealed from, and is now binding upon the railway company. We cannot give our assent to any such view. The authorities already referred to clearly establish the doctrine that the interlocutory decree appointing receivers confers no vested rights upon any outside creditor and makes no provisions which cannot be modified or changed later or in the final decree. The recital referred to orders nothing or adjudges nothing, and, if it did, was not an appealable order prior to the rendition of the final decree.

It is next urged that the true interpretation of the final decree, wherein it refers to the obligation upon the purchasers to pay any indebtedness and liabilities contracted or incurred by the railroad company prior to the appointment of the receivers, *"which are prior in lien to said gen-*

*eral mortgage,"* is that the last italicized words constitute a statement that all such indebtedness and liabilities so incurred prior to the appointment of the receivers are in fact prior in lien to the general mortgage. In other words, the contention, as we understand it, is that the reference in the final decree to "the indebtedness and liabilities contracted or incurred by the railroad prior to the appointment of the receivers" is to such claims, as a class, created by the order appointing the receivers of date June 10, 1894, and that all such claims were by the language of the final decree declared to be prior in lien to the general mortgage. We are unable to adopt that view of the decree. It is, in our opinion, not warranted by the language actually employed or the necessary implications already referred to. Moreover, it overlooks or fails to give significance to several important provisions of the decree already referred to, and in that respect violates a well-known rule of construction of contracts and other written documents. A decree as so interpreted would be so out of harmony with and so contrary to existing law and practice in equity that we would not assume it to have been made unless the language employed imperatively demanded it. We cannot, therefore, in view of what has been said, agree to the contention of learned counsel for the appellee that the claim of Osborn was ever adjudicated either by the interlocutory decree or final decree to be prior in lien to the general mortgage. It has never been so adjudicated, and until it has been no order should be made directing the appellant railway company to pay it.

But it is contended that, since the decrees were entered in the foreclosure suit, there has been a harmonious interpretation of them by state and federal courts and a cotemporaneous construction of them by the railway company, to the effect that all liabilities of whatsoever character incurred by the old company were by those decrees imposed as obligations upon the new company. Our attention is first called, in support of that contention, to the case of Goodwin v. Atchison, Topeka & Santa Fé Railway Company, 55 C. C. A. 337, 118 Fed. 403, decided by this court. Judge Thayer, in delivering the opinion, disposed of the case solely on the ground that, by the voluntary appearance of Mrs. Goodwin and submission of her cause upon its merits to the special master appointed in certain supplemental proceedings therein described, to subject unmortgaged assets of the old company to the payment pro rata of unsecured demands against that company, she was concluded by the final judgment of the Circuit Court, confirming the master's report and disallowing her claim, from again contesting the same matter in an intervening petition based on the decrees rendered in the foreclosure suit. After so disposing of the appeal, Judge Thayer took occasion to say:

"Neither the order appointing receivers for the Atchison, Topeka & Santa Fé Railroad Company, nor the decree of foreclosure, determined that the claim in controversy was preferential and must be paid in any event. The order appointing receivers placed the claim in the class of preferential demands provided the intervener succeeded in showing that she had a valid demand against the railroad company. The question of the validity of the claim was left open for adjudication by the order appointing receivers, and, as the intervener failed to show that the claim presented was a legal and lawful demand, her application for relief is not strengthened by anything con-

tained in the order appointing receivers, or in the decree of foreclosure and sale, or in the order approving the sale."

This utterance is claimed by learned counsel for appellees to constitute a construction of the decrees in the foreclosure suit in harmony with their construction. We are unable to so regard it. It is at best a construction of the order appointing the receivers. It holds, as we hold, that such order placed appellee's claim in a class of preferential demands, which, if determined to be valid, was entitled, according to the terms of that order, to payment "out of the earnings of the road;" but it does not hold or intimate, as we understand it, that, notwithstanding the provisions of the final decree superseding the interlocutory order, a valid claim in that class against the old company constituted an obligation against the new one, without a hearing and adjudication that it was prior in lien to the general mortgage.

It is next urged that the case of Atchison, Topeka & Santa Fé Railway Co. v. Cross, 63 Kan. 564, 66 Pac. 620, affords another instance of construction in harmony with the theory of appellee's counsel. That was a case in which Cross, having obtained a judgment against the old company in the state court for $4,000 with interest for the negligent killing of his son, had presented that judgment to the special master appointed in the supplemental proceedings and secured an allowance and confirmation thereof by the court of $4,000 without interest. Cross afterwards brought an action in the state court for the interest which had accrued on that judgment, amounting to about $800. The Supreme Court of Kansas held that the order of allowance by the special master, when confirmed by the circuit court, was conclusive as to the extent of the railway's liabilities, and that Cross could not relitigate the question of interest in another action. Having thus effectually disposed of the case, the court made use of the following language in its opinion:

"It is unnecessary to discuss whether, under the terms of the decree confirming the sale of the railroad property, the purchasers became liable for the payment of the judgment held by defendants in error against the old company without an order of court 'adjudging the same to be prior in lien to the general mortgage and directing payment thereof.' The quoted language has received much attention from counsel, and its meaning, when read in connection with other parts of the decree, is the subject of totally divergent views. The decision of another question in the case is, in our judgment, conclusive against recovery by the defendants in error."

For the reasons just stated there was no discussion or determination of the construction of the final decree or order confirming the sale in the foreclosure suit.

In the last-mentioned case it appears by way of evidence that the Circuit Court, in which jurisdiction of the foreclosure suit and the parties thereto was reserved by the court, at one time declared a judgment rendered against the old railroad company in the state court, in favor of one Elder for damages occasioned by negligence, to be a lien upon the property of the new company and ordered its payment by the latter company, and that it was paid as ordered. It also appears that, notwithstanding the Circuit Court had ordered that the Cross judgment be allowed against the unmortgaged assets in the hands of the receiver

in the supplemental proceedings, and to be paid pro rata with other claims against such assets, the railway company voluntarily paid the sum of $4,000 out of its own funds. These are the only two instances of conduct of the railway company looking towards a construction of the obligation imposed upon it by the decrees in the foreclosure suit brought to our attention. They are not sufficient to constitute proof of any cotemporaneous construction of the decrees. Why the railway company paid Cross $4,000 when his claim was adjudged to be entitled to participate in the unmortgaged assets only, or why it submitted to a decree, without appeal, obligating it to pay the Elder judgment, is only a matter of conjecture. There being no obligation to pay the first, and the second having been paid, without appeal, would naturally suggest that the railway company did so as a matter of policy. If it saw fit for any reasons to make a voluntary donation of $4,000 to Cross, that fact certainly should not be made use of to establish a legal liability to pay all such claims that might thereafter be presented; and, if it saw fit, for any reasons satisfactory to itself, to pay the judgment awarded in favor of Elder without an appeal to this court, that fact, in our opinion, affords no legal ground for holding that it might not thereafter contest any similar demand. Facts of which we have no knowledge may have appeared in those cases justifying or requiring the payments as made. Whatever may have been the reasons that induced the railway company to pay them are not brought to our attention. In these circumstances there is nothing before us to establish such a cotemporaneous construction as concludes the railway company from now insisting upon its rights as fixed by the decrees properly interpreted.

It results from the foregoing that any claimant of an indebtedness or liability against the old railroad company, who had not secured payment thereof out of the earnings of the road while in the hands of receivers, as provided by the interlocutory decree of January 10, 1894, was by the final decree given the opportunity to establish on principles of equity that his demand was prior in lien to the general mortgage and to secure an order from the court to that effect. This was to be established on a hearing at which purchasers or their assigns might be present and heard in defense and enjoy the usual right of appeal to a higher court, if defeated. This construction is a rational one in harmony with established principles of law and practice in equity. The other construction claimed by appellees is, in our opinion, forced and unnatural, and deprives the purchasers and assigns of their property without a day in court or an opportunity to be heard in defense of their rights.

The decree must be reversed, and the cause remanded, with instructions to proceed in accordance with the principles laid down in this opinion.