## In re BENWOOD BREWING CO.

### (District Court, N. D. West Virginia. Jan. 28, 1913.)

**1. RECEIVERS (§ 211*)—APPOINTMENT—COLLATERAL ATTACK.**

The appointment of a receiver for a private corporation by a state court of general jurisdiction having power under the state statutes to make such appointment in a proper case is a judicial act, which cannot be questioned collaterally by any other court.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 421; Dec. Dig. § 211.*]

**2. BANKRUPTCY (§ 211*)—POWERS OF COURT—ACTS OF STATE RECEIVERS.**

A court of bankruptcy being vested with exclusive jurisdiction to administer estates of insolvents when such jurisdiction is properly invoked cannot refuse to exercise it by determining the validity of indebtedness created by a state receiver for a bankrupt prior to the bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 321, 323; Dec. Dig. § 211.*]

**3. CORPORATIONS (§ 560*)—PRIVATE CORPORATIONS—CREATION OF INDEBTEDNESS—PRIORITIES.**

A court of equity is without power to authorize a receiver for a private corporation to incur indebtedness to the displacement of prior vested liens without the consent of the lienholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2253–2260, 2262; Dec. Dig. § 560.*]

In Bankruptcy. In the matter of the Benwood Brewing Company, bankrupt. On distribution of assets.

The bankrupt corporation issued bonds for $60,000, and secured the same by deed of trust upon all its real estate plant and fixtures. Nineteen thousand dollars of these bonds were sold for value. The remainder of them were hypothecated to secure sums borrowed at 50 cents on the dollar. The company became largely indebted to unsecured creditors, who were threatening suits. In this condition of affairs, Michael Agnic, in fact a stockholder, bondholder, creditor, and president of the company, presented to the circuit court of Marshall county, W. Va., his bill as an unsecured creditor only against the corporation, its bondholders, and numerous creditors, setting forth the bond issue, the debts outstanding, the threatened suits on the part of creditors, that the business was and would be profitable if creditors were stayed and a receiver appointed to conduct the business. Upon this bill and notice to the parties of the application, on November 16, 1909, the circuit court of Marshall county appointed G. D. Ridenour a special receiver, and directed him "to take charge of the real and personal property, business, and assets of the defendant, the Benwood Brewing Company, and conduct said business until the further order of this court, and collect the debts due said company, and apply and dispose of the assets of said company in accordance with the orders of said court, with the right to such receiver to employ such counsel, clerks, and other assistants as may be necessary to enable him to properly discharge his duties hereunder." Ridenour, under this appointment, did take charge of and conduct the business. In his management he incurred large indebtedness as receiver. No appearance to this bill was made until February 18, 1911, when a creditor tendered a demurrer thereto, and on February 16, 1912, certain bondholders also demurred. On the same day these demurrers were sustained, notice given by plaintiff of his purpose to file an amended bill which was filed the next day. Meanwhile, in October, 1911, this proceeding in bankruptcy was instituted, and Chas. J. Stuck was appointed receiver. In November following the company was adjudged bankrupt, the cause was referred to a referee, and Stuck elected trustee. A bitter controversy at once arose between

the three classes of creditors, the bondholders, the creditors of Ridenour, receiver, and the unsecured creditors. A petition was presented to this court objecting to the referee, and asking that the cause be referred to another. Upon consideration of this petition an order was entered, agreeable to all parties, that the referee should take the evidence, and refer the matters in dispute direct to this court for its adjudication. This he has done.

John P. Arbenz and Caldwell & Caldwell, all of Wheeling, W. Va., for bondholders.

J. B. Sommerville, of Wheeling, W. Va., for Ridenour, state receiver, and his creditors.

McCamic & Clarke, of Wheeling, W. Va., for creditors of state court receivers.

Erskine & Allison, of Wheeling, W. Va., for other creditors of state receiver.

J. H. Brennan, of Wheeling, W. Va., for bankrupt's receiver.

DAYTON, District Judge (after stating the facts as above). The main controversy here is between the bondholders and the state receiver and creditors representing debts incurred by him as such receiver.

The bondholders insist that their prior vested lien upon the corpus of the property cannot be impaired or diminished by payment of the state receiver's compensation for services rendered by him, his counsel fees, and debts incurred by him. They base this contention upon substantially two grounds: First, because the circuit court of Marshall county had no jurisdiction to appoint Ridenour receiver because of lack of equity apparent on the face of the bill, that it has itself so held by sustaining the demurrer thereto; second, because a court of equity has no power, without the consent of all lien creditors, to authorize the receiver of an insolvent private corporation, whose business is not affected with any public interest, to incur indebtedness which will be a paramount lien upon its property, for the purpose of carrying on its business, unless it be necessary to do so to preserve the existence of the property or franchises.

[1] In determining the first proposition it seems to me necessary to bear in mind that this state court was one of general jurisdiction; that the property and the parties in interest were within its judicial limits and control; that it had under proper conditions the right and power to appoint a receiver for the company for all legal purposes and not otherwise.

[2] It seems to me, therefore, that the determination of whether the bill presented such equity as warranted the exercise of its admitted power to appoint was a judicial act such as could be, if not revoked by the court itself, only reversed by appeal to the proper appellate court, and, until so reversed, cannot be questioned collaterally by this or any other court. This bankruptcy court cannot under any circumstances exercise such appellate powers over the judicial acts of state tribunals. Where the act of such state court is absolutely null and void by reason of want of jurisdiction over the subject-matter or parties, then such act can be attacked collaterally in this as in

all other courts. The fact that this state court has sustained a demurrer to the original bill under which it appointed the receiver is strongly indicative of its doubt after maturer consideration of the propriety of appointing such receiver, but it is to be remembered that it has not reversed the appointment and discharged him, but, on the other hand, has, in effect, continued him and permitted the plaintiff in the proceeding to file an amended bill, a demurrer to which, the record discloses, it has now under advisement. The filing of such amended bill is expressly authorized by statute in this state, and, if the amendment is proper, it is held to relate back in effect to the time of the filing of the original bill. I am therefore convinced that these bondholders cannot maintain here their first contention. The second one presents far more difficulty. Its solution cannot be solved upon the same grounds as the first, in my judgment, for two reasons: First, because the state court has not passed upon or approved in any manner the legality of its receiver's expenditures, has not decreed payment of any of the debts contracted by him nor determined whether they were authorized legally to be incurred by him; second, the jurisdiction of this court in bankruptcy is essentially exclusive in administering the affairs of insolvent individuals and corporations. New River Coal Land Co. v. Ruffner Bros., 165 Fed. 881, 91 C. C. A. 559. It cannot, when properly applied to, refuse to take jurisdiction because a proceeding to the same end and purpose is pending in a state court, but, per contra, it may stay all action in the state court in such proceeding. This for the reason, among others, that the Bankrupt Act as the supreme law of the land must see that the insolvent's assets are administered in accord with its requirements, and not in accord with state laws that may be in antagonism to it. I have pointed out in Re Hurst (D. C.) 188 Fed. 707, at bottom page 709, the antagonism existing between the Bankrupt Act and the law of this state relating to preferences, which very well illustrates the reason for this exclusive jurisdiction. It therefore becomes necessary for this court to determine the validity of these debts incurred by the receiver and their claim of priority over the bondholders.

[3] The first inevitable conclusion to be drawn from the evidence is that these debts were incurred by the receiver not in preserving the property, but in operating and adding to it. They were incurred for coal, grain, hops, malt, bottles, boxes, and other articles necessary to the manufacture, shipping, and sale of beer. It goes without saying that this corporation was a purely private one. Under such circumstances, could any court of equity allow its receiver to incur such debts and charge them against the corpus of the corporation's estate in preference to vested prior liens without the consent of such lienholders? There may be some confusion of authority upon this question, but it seems to me that the great weight of such authority, as well as sound reason and morals, favor the negative answer to it. In the first place, a sound distinction is to be drawn between these purely private corporations and quasi public ones, such as railroad, telegraph, and telephone ones. In the latter the public at large has interest, in the former none whatever. Yet in Kneeland v.

American Loan Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379, involving a railroad receivership, the Supreme Court says:

"Upon these facts we remark, first, that the appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. Because in a few specified and limited cases this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims. It has been assumed that a court appointing a receiver could rightfully burden the mortgaged property for the payment of any unsecured indebtedness. Indeed, we are advised that some courts have made the appointment of a receiver conditional upon the payment of all unsecured indebtedness in preference to the mortgage liens sought to be enforced. Can anything be conceived which more thoroughly destroys the sacredness of contract obligations? One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. So, when a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority. No one is bound to sell to a railroad company or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of a contract lien, for the reason that there seems to be growing an idea that the chancellor in the exercise of his equitable powers has unlimited discretion in this matter of the displacement of vested liens."

This ruling has been approved in Thomas v. Western Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663; Southern Ry. v. Carnegie Steel Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458; Gregg v. Metropolitan Trust Co., 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717. It has been very clearly considered in the case of International Trust Co. v. United Coal Co., 27 Colo. 246, 60 Pac. 621, 83 Am. St. Rep. 59, and in a very clear and valuable note thereto found in this last cited report thereof. See, also, Atchison, T. & S. F. Ry. Co. v. Osborn, 78 C. C. A. 378, 148 Fed. 606. These cases are cited to show that in the cases of quasi public corporations receiverships must be limited in their power to affect vested liens, and therefore for stronger reasons private ones must be so limited. It is not the province of a court of equity, except under most extraordinary conditions, to establish and maintain a stay of collection by creditors of their debts against individuals or private corporations, nor is it its province to embark in and conduct private business enterprises. In U. S. Investment Corporation v. Portland Hospital, 40 Or. 523, 64 Pac. 644, 67 Pac. 194, 56 L. R. A. 627, it was held:

"A court cannot in appointing a receiver for a hospital authorize him to continue its operation, and contract debts which shall, without the consent of prior contract lienholders, take precedence over their claims. Mere failure of holders of prior contract liens on a hospital to object to the carrying on of the business by a receiver of the property, not appointed at their request, will not estop them from denying that debts thereby contracted shall take precedence of their claims, where nothing in the proceedings indicates an intention to charge the property with preferred liens for debts contracted by him."

In Dalliba v. Winschell, 11 Idaho, 372, 82 Pac. 109, 114 Am. St. Rep. 267, it was held that a court cannot direct a receiver in charge of placer mines to carry on mining business and make expenses thereof preferred over prior mortgage. In Fisher v. Southern Loan & Trust Co., 138 N. C. 103, 50 S. E. 592, at page 597, it was held that the court cannot authorize issuance of receiver's certificates to pay expenses of administrator in discharging mortgages, paying funeral expenses, attorney's fees, and expense of support of family.

In Fidelity Insurance, Trust & Safe Deposit Co. v. Roanoke Iron Co. (C. C.) 68 Fed. 623, the late Judge Paul of the Western District of Virginia, within this circuit, very clearly discusses the question, holding that:

"A court of equity has no power without the consent of all lien creditors to authorize the receiver of an insolvent private corporation, whose business is not affected with any public interest, to issue certificates which will be a paramount lien upon its property, for the purpose of carrying on its business, unless it be necessary to do so in order to preserve the existence of the property or franchises."

And, finally, it has been held by the Circuit Court of Appeals for this circuit in Baltimore Building & Loan Ass'n v. Alderson, 32 C. C. A. 542, 90 Fed. 142, that:

"A court cannot authorize the issuance of receiver's certificates for the purpose of improving or adding to the property of a private corporation, or of carrying on its business, without the consent of creditors whose liens would be affected thereby."

In accord with these principles, I hold that neither the claims of the receiver for personal compensation and counsel fees nor the debts incurred by him as receiver can be allowed to take precedence over the bond lienors, save and except the bonds held by Agnic, who sought and applied for the receiver's appointment, and must be held to have fully consented to his expenditures incurred in carrying on the business. Those bondholders, except Agnic, who purchased bonds outright for value, must be paid in full. Those who took bonds as collateral security must be paid the amounts of their debts so secured by said bonds before any of these state receiver obligations. As regards any surplus remaining, it is entitled to be applied to the payment of reasonable compensation and counsel fees of such receiver, and then to his receivership debts ratably, then Agnic's bonds will be next payable, and finally simple contract debts of the bankrupt.

The cause will therefore be remanded to the referee with instructions to direct Stuck, trustee, to pay out of the funds arising from other sources than the incumbered property: (a) The costs and expenses of this proceeding, including an attorney's fee of $150 to the attorney for the petitioning creditors; (b) the costs of the receivership in this court, including that for the appraisement made, the fee for his attorney of $250, and for his personal compensation $600 (it is clear from the record that the matters were so involved and complicated and legal services were so necessary, as to make these allowances reasonable); (c) any residue of such funds arising from other sources than the mortgaged property he shall apply to the payment of a rea-

sonable counsel fee for services rendered to Ridenour the state receiver to a reasonable allowance to him for his services, then to the debts incurred by him to be paid ratably, and then any residue ratably to the unsecured creditors of the bankrupt. The proceeds of the sale of the mortgaged property he shall apply first to the payment of the bonds as herein above indicated, and as to any residue he shall direct the payment thereof to be made in the same order as above directed to be made of the fund arising from the unincumbered property.