TRUST CO. OF AMERICA v. NORFOLK & S. RY. CO.

(Circuit Court, E. D. North Carolina. January 3, 1911.)

No. 312.

1. RAILROADS (§ 171*)—MORTGAGES—FORECLOSURE—JUDGMENT FOR TORT—PRIORITY.

Revisal N. C. 1905, § 1131 (Code 1883, § 1255), provides that corporations shall not have power by mortgage of their property or earnings to exempt same from execution for the satisfaction of any judgment obtained against such corporation for tort committed by the corporation, whereby a person is killed or injured. *Held* that, where, pending a suit to foreclose a railroad mortgage in the federal court, a passenger recovered judgment in a state court against the railroad company for alleged personal injury, resulting from assault and battery committed on him by the railroad company's conductor, the judgment constituted a prior lien on the railroad company's property to that of the mortgage foreclosed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 566; Dec. Dig. § 171.*]

2. COURTS (§ 494*)—CONFLICTING JURISDICTION—RECEIVER—DISCHARGE—PROCEEDINGS IN OTHER COURT.

Where litigation in a federal court to foreclose certain railroad mortgages had terminated and the possession of the railroad property by receivers had terminated and they have been discharged, the state courts were at liberty to deal with the property in the hands of the purchaser according to the rights of the parties before the court, whether such rights required the court to take possession of the property or not.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1356; Dec. Dig. § 494.*]

3. RAILROADS (§ 194*)—SOLVENCY—RECEIVERS—FORECLOSURE OF MORTGAGES—JUDGMENT FOR TORT—EXECUTION.

Suit in a state court by a passenger against a carrier for tort having been brought, proceedings were instituted in a federal court to foreclose certain mortgages on the railroad company's property. Receivers appointed in that suit were not made parties to the action in the state court, but they had notice thereof, and by their counsel conducted the defense. The mortgages were of no validity as against the passenger's claim, and judgment was subsequently rendered therein in favor of the passenger. He took no steps to have the same allowed as a claim in the mortgage foreclosure proceedings, and the railroad company's property was sold under decree entered a few days after the rendering of the judgment in the state court. The decree only required the purchaser to pay a fixed sum supposed to be sufficient to discharge costs, allowances, etc., and authorized the balance of the price to be paid by the cancellation and delivery of bonds according to their relative priority and in addition required the purchaser to assume the payment only of such claims as have been filed with the master and had priority over the mortgage indebtedness. *Held*, that the passenger was under no obligation to file his judg-

---

ment in the foreclosure proceedings and that after their termination, the property sold was liable to execution therefor in the hands of the purchaser.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 194.*]

In Equity. Bill by the Trust Company of America against the Norfolk & Southern Railway Company. Bill by the Norfolk-Southern Railroad Company to enjoin the sale of property purchased by it under foreclosure decree against a railway company for the payment of a judgment recovered by one J. F. Talbott for an alleged assault and battery on him by a train conductor prior to the filing of the bill to foreclose. Denied.

Thos. L. Chadbourne, Jr., and George Rublee, for complainant.

Edward R. Baird, Jr., and Harry Skinner, for defendant.

E. F. Aydlett, for judgment creditors.

CONNOR, District Judge. On July 1, 1908, complainant filed its bill in the Circuit Court of the United States for the Eastern District of Virginia against the Norfolk & Southern Railway Company, a Virginia corporation, for the purpose of foreclosing certain deeds in trust executed by said corporation to complainant for the purpose of securing the payment of certain bonds, all of which will fully appear by reference to the record in this cause. Complainant prayed the court to bring the property to sale, and, pending the suit, to appoint receivers, etc. The defendant's property consisted of a railroad track, rolling stock, and a large quantity of real estate, lying in the states of Virginia and North Carolina; said track running through the county of Currituck in said last-named state. Receivers were appointed by the judge of the Circuit Court for the Eastern District of Virginia. On July 2, 1908, an ancillary bill was filed in the cause in the Circuit Court of the United States for the Eastern District of North Carolina, and the same persons named by the court of original jurisdiction were appointed ancillary receivers. They qualified, in accordance with the provisions of the orders of the court, and took possession of and operated the property until April 30, 1910. On September 3, 1906, J. F. Talbott, a citizen of North Carolina, instituted an action in the superior court of Currituck county, in said state, against the defendant company, alleging in his complaint as his cause of action that, while a passenger on defendant's train, the conductor in charge of said train and in defendant's employment, committed an assault and battery upon him, for which he demanded damages, etc. The defendant appeared by counsel in said cause and filed an answer to the complaint. The receivers were not made parties, but had notice of the pendency of said cause, and, by their counsel, conducted the defense thereto. At the September term, 1909, of said court, Talbott recovered judgment in said action, upon the verdict of a jury, against defendant, Norfolk & Southern Railway Company, for $1,500, said amount being awarded as damages for the wrongful act of defendant's employé, as alleged in the complaint. The judgment was duly docketed on the judgment docket of said county in

accordance with the provisions of the statute of North Carolina, and, by virtue thereof, constituted a lien upon the real estate of defendant company in said county. A transcript of the judgment was docketed in Pasquotank county. Said Talbott has not, at any time, filed with the special master appointed by this court in this cause, any notice of his said claim or demand for the payment thereof; nor has he intervened or taken any action whatever in this cause in regard to his claim or the judgment rendered thereon.

On the 19th day of October, 1909, an order was made by the Circuit Court of the United States for the Eastern District of Virginia, in this cause, and in the said court for the Eastern District of North Carolina, directing that all of the property of defendant company in both states be sold, and appointing commissioners for the purpose of making such sale. By the provisions contained in said order, the purchasers, in addition to the amount bid at the sale for said property, among other things, assumed the payment of "all claims and demands heretofore filed under the order of reference heretofore entered herein, on the 23d day of October, 1908, which have been, or may hereafter be, established thereunder as prior in lien to said first and refunding mortgage hereby foreclosed, and which, at the time of the sale hereunder, may remain unpaid." The usual provision was made, in said order, empowering the court to make further orders to enforce the performance of the terms of sale, etc. Pursuant to said order the commissioners made sale of the property of defendant on December 7, 1909. On April 30, 1910, said sale was confirmed, and the terms thereof complied with, in respect to the payment of the purchase price. It was provided in said order that the purchaser should pay $100,000 in cash to cover expense, etc., and the balance in the bonds secured in said deed. The commissioners were directed to make title to the purchaser, the Norfolk-Southern Railroad Company, and to deliver and turn over the said property to said purchaser, all of which has been done. Talbott, plaintiff in the aforesaid action, after demanding payment of his judgment, which was refused, sued out an execution on the 24th day of June, 1910, and placed the same in the hands of the sheriff of Pasquotank county. The sheriff levied said execution on certain real estate, owned by defendant company, and advertised same for sale. The purchaser, the Norfolk-Southern Railroad Company, seeks to enjoin the sale of said property under said execution. An order directing the sheriff and said Talbott to show cause why an injunction shall not be granted, was issued, and, upon the return day, the parties were heard upon said motion. The foregoing facts are found by an inspection of the record and affidavits filed herein.

It further appears that, upon the institution of this suit, an injunction was issued restraining all parties to actions then pending in the state courts, from proceeding therein, and that said injunction was, in a few days thereafter, dissolved. It is conceded that the purchase price bid for the property is not sufficient to pay the bonded indebtedness secured by the mortgages.

By virtue of the provisions of section 1131, Revisal N. C. 1905 (Code 1883, § 1255), the property of the defendant corporation is not

exempt from the payment of the claim or cause of action upon which the judgment was obtained by Talbott, by reason of the execution of the several mortgages executed by it to complainants. The validity and construction of the statute were passed upon by the Supreme Court of the United States in Guardian Trust Co. v. Fisher, 200 U. S. 57, 26 Sup. Ct. 186, 50 L. Ed. 367, and by the Supreme Court of North Carolina in Railroad v. Burnett, 123 N. C. 210, 31 S. E. 602. The court held that, while not bound by the decision upon the facts set out in the complaint, it concurred with the state court in holding that plaintiff's complaint set out a cause of action in tort. Mr. Justice Brewer, by way of illustration, said:

"If a railroad company contracts to carry a passenger there is an implied obligation that he will be carried with reasonable care for his safety. A failure to exercise such care, resulting in injury to the passenger, gives rise to an action ex contractu for breach of the contract, or as well to an action for the damages on account of the negligence—an action sounding in tort."

Talbott alleges that, after he had become a passenger by purchasing a ticket, he was prevented from boarding the train and assaulted by the defendant's conductor. These allegations are found by the jury to be true. It appears that the judge presiding reduced the verdict of the jury to the sum of $1,500. It is therefore manifest that Talbott had, on September 3, 1906, a cause of action in tort against the Norfolk & Southern Railway Company, with the legal right to sue upon and prosecute it to judgment in the superior court of Currituck county and that, by virtue of the statute law of the state, this cause of action, when reduced to judgment, was entitled to priority over the mortgages executed by the corporation; that is, the property was not exempt from sale by reason of the execution of such mort-gages. If the judgment had been rendered prior to July 1, 1908, the date upon which this suit was instituted in the Circuit Court of the United States, an execution issued upon such judgment would have been levied upon the property and sale made thereof, passing title to the purchaser exempt from any lien or incumbrance created by the mortgages.

An order was made October 23, 1908, by the Circuit Court for the Eastern District of North Carolina, appointing a special master with permission to all persons having claims against the defendant company to file them with the master, etc. The Norfolk-Southern Railroad Company insists that, conceding Talbott's judgment to be a valid claim against the Norfolk & Southern Railway Company, having priority over the mortgages held by complainant, he should be required to intervene in this suit and have his rights passed upon by the special master, and, upon exceptions to his findings, by the court: that this is his only remedy. When one court has taken possession of property by its receiver, no other court will be permitted to interfere with such possession. This is conceded to be the general rule. Mr. Justice Miller in Buck v. Colbath, 3 Wall. 334, 18 L. Ed. 257, says:

"Whenever property has been seized by an officer of the court, by virtue of its process, the property is to be considered as in the custody of the court

and under its control for the time being; and no other court has a right to interfere with that possession," etc.

See Moran v. Sturges, 154 U. S. 256, 14 Sup. Ct. 1019, 38 L. Ed. 981.

"It is a general rule that property in the hands of a receiver cannot be sold under attachment or execution, unless leave of the court, before which the receivership is pending, is first obtained." Street's Fed. Eq. Prac. § 2602.

In Wiswall v. Sampson, 14 How. 52, 14 L. Ed. 322, Mr. Justice Nelson says:

"A party holding a judgment which is a prior lien upon the property, the same as a mortgage, if desirous of enforcing it against the estate, after it has been taken into the care and custody of the court to abide the final determination of the litigation, and pending that litigation, must first obtain leave of the court for this purpose. The court will direct a master to inquire into the circumstances, whether it is an existing, unsatisfied demand or as to the priority of the lien, etc., and take care that the fund be applied accordingly."

In that case a judgment creditor issued execution and sold property while the suit in equity, in which the receivers had been appointed, was pending. The court held that the sale was void. The learned justice said that the creditor should have intervened, and that, "in administering the fund, the court will take care that the rights of prior liens or incumbrances shall not be destroyed."

In Heidritter v. Elizabeth Oil Cloth Co., 112 U. S. 294, 5 Sup. Ct. 135, 28 L. Ed. 729, the principle was applied when the government had instituted a proceeding in rem against certain real estate for violation of provisions of the internal revenue laws by the owner. Pending the proceeding, certain parties, claiming to have a mechanic's lien upon the property, instituted an action in the state court, obtained judgment, issued execution, and, subsequent to the sale under the proceeding by the government, sold the property. The court held the sale void. It is manifest that this court would not permit Talbott to enforce the payment of his judgment by sale while the property was in the possession of the receivers, but it is insisted that the rule does not apply when the property has been sold by the commissioners appointed by the court—the sale confirmed and the property delivered to the purchaser. There is no longer any necessity for restraining the judgment creditor from enforcing his legal rights. Mr. Justice Miller in Buck v. Colbath, supra, after stating the rule and the reasons upon which it is founded, in his usual clear and forceful style, proceeds to say:

"This principle, however, has its limitations; or rather its just definition is to be attended to. It is only while the property is in the possession of the court, either actively or constructively, that the court is bound, or professes to protect that possession from the process of other courts. Whenever the litigation is ended, or the possession of the officer of the court is discharged, other courts are at liberty to deal with it according to the rights of the parties before them, whether those rights require them to take possession of the property or not. The effect to be given in such cases to the adjudication of the court first possessed of the property, depends upon the principles familiar to the law; but no contest arises about the mere possession, and no conflict but such as may be decided without unseemly and discreditable collisions."

In Moran v. Sturgess, 154 U. S. 256, 275, 14 Sup. Ct. 1019, 1025, 38 L. Ed. 981, this language is quoted with approval by Mr. Chief Justice Fuller. This view has been held by the Supreme Court of North Carolina in Railroad Co. v. Burnett, 123 N. C. 210, 31 S. E. 602, in which the facts are strikingly similar to those presented upon this record. A railroad company executed a deed in trust to the State Trust Company of New York to secure the payment of bonds. A suit in the Circuit Court of the United States for the Eastern District of North Carolina, was instituted for the purpose of foreclosing the equity and bringing the property to sale. A receiver was appointed who took possession. Burnett brought suit in the state court for the recovery of damages sustained while a passenger on the train of the railroad company prior to the institution of the suit in equity, and, pending that suit, prosecuted his action to judgment. The claim was passed upon by the master, but not provided for in the decree. The property was sold and passed into the possession of the purchaser. Burnett sued out execution on his judgment, and the purchaser sought an injunction to restrain the sale, etc. The court held that the judgment was upon a cause of action given priority over the mortgage by the state statute. Section 1255, Code 1883. Referring to other cases construing the statute, Furches, J., says:

"These opinions are expressly put upon the ground that the mortgages were void as to such claims, and that the property stood, so far as such claims are concerned, just as if no mortgage had been made."

To the same contention made here, the learned justice said:

"This is not disputed. But the defendant was not a party to that suit, and no rights that the defendant Burnett had are affected by this decree and order of sale. Therefore the fact that the plaintiff claims under a decree made of foreclosure and order of court does not affect the rights of the defendant Burnett. The order was based on the mortgage and conveyed no more than was conveyed by the mortgage. It conveyed no more than would have been conveyed by a foreclosure of the mortgage, under a power of sale contained in the mortgage."

While the court noted the fact that Burnett's claim had been filed with the master, thereby giving notice to the purchaser, the judge is careful to say:

"But this notice of the defendant's claim is not involved in the principle upon which this case is decided. The principle underlying this decision, and upon which it is decided, is that under section 1255 of the Code the mortgage conveyed nothing as against this claim, and, as it conveyed nothing as against the claim, the purchaser got nothing as against the claim, by the mortgage sale."

The learned counsel for complainant insists that, notwithstanding the rendition of the judgment in the state court, before its payment may be enforced against the property, its validity and right to priority must be passed upon and approved by the special master. This position is based upon two conceptions. One, that immediately upon the filing of the bill in the Circuit Court, followed by the appointment and qualification of the receivers, all judicial proceedings, suits, etc., pending in other courts, whether involving claims against the corporation for torts or for the enforcement of contracts, are drawn into

the jurisdiction of the Circuit Court, unless that court grant leave to
the parties to proceed in the state court. The same view was ad-
vanced by counsel in Buck v. Colbath, supra, and disposed of by Mr.
Justice Miller in the following language:

"It is not true that a court having obtained jurisdiction of the subject-mat-
ter of a suit, and of parties before it, thereby excludes all other courts from
the right to adjudicate upon other matters having a very close connection
with those before the first court, and, in some instances, requiring the deci-
sions of the same questions exactly, for in examining into the exclusive char-
acter of the jurisdiction of such cases, we must have regard to the nature of
the remedies, the character of the relief sought and the identity of the par-
ties in the different suits. * * * The limitation of the rule must be much
stronger, and must be applicable under many more varying circumstances
when persons not parties to the first proceeding are prosecuting their own
separate interests in other courts."

The present case illustrates the principle announced by the learned
justice.

Talbott, before the suit in the Circuit Court was instituted, had
begun his action at law for damages against the defendant for a tort.
The mortgages held by complainant were of no validity as against
his claim, and could, under no circumstances, be an obstruction to the
enforcement, by final legal process, of such judgment as he should
recover. He had a perfect legal right, enforceable in a court of law.
His cause of action did not involve the title to the property of de-
fendant or the right to possession. The court, in rendering judg-
ment, made no deliverance nor adjudication in either respect. The
defendant litigated the action with Talbott in the state court from its
institution on September 3, 1906, and the receivers from their ap-
pointment, until final judgment September, 1910, thus waiving any
right to remove it into this court. Upon their motion, the first ver-
dict of the jury was set aside, and on the last trial, reduced from
$4,000 to $1,500. It is strongly urged, and supported by affidavits
of counsel and the presiding judge, that this was done after consul-
tation by counsel with the receivers and an agreement to pay the judg-
ment, as rendered. While the action is pending and a recovery be-
ing resisted, complainants prosecute their suit in equity to foreclose
mortgages declared by the statute of North Carolina to be invalid as
to plaintiff's cause of action. The decree of sale in this court is taken
a few days after the rendition of the judgment in the state court, and
the terms of sale, it would seem, carefully drawn to exclude this
judgment from participation in the proceeds, and to relieve the pur-
chaser from any liability for its payment. The purchaser is to pay
his bid on account of a fixed sum, supposed to be sufficient to dis-
charge cost, allowance, etc., and the balance of the purchase price is
to be paid by the cancellation and delivery of bonds according to
their relative priority, and, in addition to assume the payment of such
claims as have been filed with the master, having priority over the
mortgage indebtedness. The sale has been confirmed, the purchase
price paid and satisfied in accordance with the terms of the sale, deed
has been executed, and the property, in its entirety, turned over to
the purchaser, the Norfolk-Southern Railroad Company. It will be
observed that the Circuit Court of the United States for the East-

ern District of North Carolina has had only ancillary jurisdiction in this cause. It has been so conducted, and the property so operated by the receivers that, although five-sixths of its trackage and almost its entire holdings of other property are within the borders of the state of North Carolina, not one dollar of its income during the receivership or the proceeds of the sale has found its way into the registry of this court, or under its control. If Talbott is not permitted to enforce the payment of his judgment, by the process of the state court, he will be compelled to go into the federal court in Virginia to enter upon new litigation to enforce a demand adjudged in his favor by the court of North Carolina. Suppose that the contention of the purchasers be sustained, and he be sent into that jurisdiction, what power has that court to give him relief? It has sold the property out of which his judgment must be collected, the defendant is insolvent, the purchaser has complied with the terms of its purchase, and has possession of the property. To send him into that tribunal would be to keep the promise to the ear and break it to the heart. It is said that he had permission to intervene and protect his rights before the sale was made. The obvious answer is he was not compelled to do so. It would seem that the parties to the suit should have seen to it that his rights were protected. In United States Trust Co. v. New Mexico, 183 U. S. 535, 22 Sup. Ct. 172, 46 L. Ed. 315, complainant filed its bill in equity for the purpose of foreclosing a mortgage executed by a railroad company, a receiver was appointed, and the property was sold under a decree which provided that, in addition to the sum bid by the purchaser, he should pay "any indebtedness and liabilities contracted or incurred by said defendant railroad company in the operation of its railroad prior to the appointment of receivers which are prior in lien to the first mortgage bonds. * * * Any such claim, indebtedness, obligation, or liabilities which shall not have been presented to the receivers or filed with the clerk of this court prior to the time of the delivery of the possession of such property shall be presented for allowance and filed within six months after the publication by the receiver of a notice to the holders of such claims for allowances." The receiver was directed to give notice in certain specified newspapers, etc. The tax collector for the territory, after the sale, but while the property was in the possession of the receiver, filed his petition to intervene and demand payment out of the purchase money of the amount due by defendant for taxes. The District Court dismissed the petition. Upon appeal it was held that the petition was in time. It will be noted that the decree in this case differs, in a material respect, from that in the case cited. Here, the purchaser is required to pay only those claims which have been filed with the master before the day of sale, and no time is allowed, nor is any notice required to be given claimants to file claims before final distribution of the proceeds of the sale.

It is well settled that when a court of equity undertakes to sell a perfect title to property and discharge all liens upon it, or pay off all existing claims entitled to share in the proceeds, it has the power, by appropriate process, to bring all such claimants before the court and

adjudge their validity and order of priority, but it is equally well settled that before claimants are thus barred and foreclosed they must be made parties or brought into the record, and a reasonable time given within which to present their claims and be heard. The claim of Talbott was for damages, triable by a jury in the state court, and, under any aspect of the case, he should have been given notice and a reasonable time after the rendition of his judgment to intervene. The judgment was rendered about one month before the decree for the sale of the property was made.

It will be noted that the statute (Act Aug. 13, 1888, c. 866, 25 Stat. 436 [U. S. Comp. St. 1901, p. 582]) permits parties to institute and prosecute actions against a receiver appointed by the federal courts "in respect to any act or transaction of his in carrying on the business connected with such property without previous leave of the court," subject to such equity jurisdiction of the Court, "so far as the same shall be necessary to the ends of justice." In Wilcox v. Jones, 177 Fed. 870, 101 C. C. A. 84, it was held by the Circuit Court of Appeals, Fourth Circuit, that when an action against a receiver, coming within the terms of the act, had been prosecuted to judgment, the federal court had no power to call into question the validity of the judgment or the amount recovered in the state court. Judge Pritchard, in a well-considered opinion, shows, both from the language of the statute and the decisions of the federal courts, that the last clause in the act confers no other power on the court than to protect the possession of the receiver and provide for the payment of the judgment according to its priority over other claims against the property. It would seem that, by analogy, this court would have no other power in regard to the judgment against the defendant corporation upon claims accruing prior to the appointment of the receiver and in litigation at the time of such appointment. Assuming, for the purpose of discharging this duty, and for the purpose of protecting the title of the purchaser, under the decree of the court, that this court has the power conferred by the act in the class of cases coming within its provisions, and that it will inquire into the question of Talbott's alleged priority, why refer the matter to the master? It is manifest that the judgment is valid, that it is upon a cause of action having priority over the mortgages under which the purchaser claims title; that the purchaser holds title subordinate to the claim or judgment; that the court has no power to amend the decree of sale and confirmation. Why, then, should Talbott be delayed in the enforcement of his judgment? It must, in any possible view of the case, be paid by the purchaser of the property, and the only process which can be resorted to for this purpose is the execution from the state court.

I have examined a number of cases more or less in point, and find that the court has uniformly, in its decree of sale, made provision for dealing with and discharging claims having priority over the mortgages being foreclosed, out of the proceeds of the sale, or by expressly imposing the duty of paying them upon the purchaser in addition to the sum bid for the property. Com. Roofing Co. v. Trust Co., 135 Fed. 981, 68 C. C. A. 418; Atchison, etc., Ry. Co. v. Osborn,

148 Fed. 606, 78 C. C. A. 378. The motion for an injunction restraining Talbott from proceeding to enforce the collection of his judgment by execution is denied. The cost will be taxed against the movant, the Norfolk-Southern Railroad Company.